JAMES E. CALDWELL & COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37967. Filed June 30, 1955.

---

598

*David M. Keeble, Esq.*, for the petitioner.
*Frederick T. Carney, Esq.*, for the respondent.

OPINION.

PIERCE, *Judge:* The first question for consideration is how the basis of the petitioner's real estate was affected by its settlement of the Chancery Court proceeding, wherein the First National Bank of St. Louis, as a judgment creditor of Caldwell, had sought to partially annul and rescind Caldwell's conveyances of such real estate, on the ground that the property had been transferred in fraud of creditors. Petitioner's contention is that court costs and the $50,000 paid to the creditor in compromise of such proceeding, represented expenditures incurred in removing a cloud on *its* title; and that therefore it is entitled not only to capitalize these payments, but also to add the same to the cost basis for the property which would be allowable with respect to Caldwell's conveyances if the same had been complete and unrescindable.

We think that such contention is unsound. It fails to recognize that the income tax consequences of the settlement of litigation must be determined with regard to the nature of the claim involved and the relationship of the parties to the controversy; that the "cloud" sought to be removed by the creditor's bill was actually a challenge to the completeness and validity of Caldwell's conveyances, upon which petitioner must rely to sustain its original basis; and that since the creditor had, and could have, no interest in the property except that which it obtained through and under Caldwell or his estate, petitioner did not possess, after the "cloud" had been removed and its dealings with

Caldwell and his creditor had been completed, any other or greater interest in the property than Caldwell's entire title, with respect to which petitioner's basis had already been determined and allowed. The contention of petitioner fails also to give recognition to the fact that the parties defendant to the equity proceeding, which challenged the completeness and validity of Caldwell's conveyances, included not only the petitioner but also Caldwell and all persons who had any legal or equitable interest in the shares of stock that had been delivered in consideration for the conveyances; and that, since Caldwell had acted not only as the conveyor but also as petitioner's principal officer at the board of directors' meeting where the purchase was authorized, and since the above-mentioned shareholders were donees of Caldwell, none of the defendants may be regarded as innocent purchasers for value.

The principle is now well established that the income tax consequences of compromises of litigation must, where the litigation has substance, be determined with regard to the nature of the claim involved and the relationship of the parties to the proceeding. In *Lyeth* v. *Hoey*, 305 U. S. 188, where a will contest was settled and the question was whether the amount paid to the contesting heirs should be regarded as a tax-free "inheritance," or merely as ordinary income realized on a "bargaining position," the Court said:

Petitioner was concededly an heir * * *. Save as heir he had no standing. * * *

It does not seem to be questioned that if the contest had been fought to a finish and petitioner had succeeded, the property which he would have received would have been exempt under the federal act. Nor is it questioned that if in any appropriate proceeding, instituted by him as heir, he had recovered judgment for a part of the estate, that part would have been acquired by inheritance within the meaning of the act. We think that the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound, * * *

We are not convinced by the argument that petitioner had but "the expectations" of an heir and realized on a "bargaining position". * * *

In *Helvering* v. *Safe Deposit & Trust Co. of Baltimore, Trustee*, 316 U. S. 56, the Supreme Court again applied this principle, and quoted with approval its statement in the *Lyeth* case, that "the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound."

Other applications of the same principle are to be found in the statute, and in cases decided both before and after the *Lyeth* case. For example, sums received in settlement of claims for personal injury are deemed exempt from tax in the same manner as if a judgment for personal injuries had been obtained (sec. 22 (b) (5), I. R. C. of 1939); whereas amounts received in settlement of claims for rent,

royalties, or profits have been held to be taxable income, because of the nature of the claims involved (*Hort* v. *Commissioner*, 313 U. S. 28, 30–31; *United States* v. *Safety Car Heating & Lighting Co.*, 297 U. S. 88; *Swastika Oil & Gas Co.* v. *Commissioner*, 123 F. 2d 382). And in other cases, where amounts were received in compromise of suits to recover interests in property alleged to have been wrongfully or fraudulently taken away, such amounts have been held to constitute either a return of capital or capital gain, as though the claimant had first recovered his property through the litigation, and then resold it to the opposing party for the amount of the settlement. *Margery K. Megargel*, 3 T. C. 328; *Charles S. Davis, Trustee*, 35 B. T. A. 1001.

The principle thus established gives recognition to the fact that settlements of litigation are favored; and that settlements would be discouraged if the taxpayers could not obtain through compromise the same income tax rights and benefits as would be allowable if the litigation were carried to final judgment. It is only by treating compromises as *pro tanto* confessions of judgment that an orderly analysis of the tax results may be made.

Applying to the instant case the above-mentioned principle and the methods of analysis used in the *Lyeth* and *Megargel* cases, the situation revealed is as follows: The First National Bank of St. Louis was concededly a creditor of Caldwell; and save as such creditor who held rights through and under Caldwell, it had no standing. By virtue of that relationship and in enforcement of its rights, it sought to annul and rescind, in part, the conveyances of real estate which Caldwell had made to petitioner, on the ground that they were fraudulent and void. If the contest had been fought to a finish and the creditor had succeeded, part of the real estate would have been returned to Caldwell or his estate, without right of redemption in petitioner, to be applied in satisfaction of the judgment outstanding against Caldwell; and upon such restoration, any basis that might theretofore have attached to the property in petitioner's hands would have been lost, for the basis could not exist apart from the property. And if, at this point, petitioner had elected to repurchase the lost property from Caldwell (or from his estate or his creditor), either by paying cash after the return of the property, or by the short-cut method of delivering cash in lieu of the property, then it would have acquired a new basis for the property so purchased, equal only to the amount then paid—not a double basis equal to its new cost plus the prior basis which had been lost. As in the case of one who has purchased stolen property and then been compelled or induced to restore it to the rightful owner, whatever basis the purchaser had tentatively acquired is wiped out by the rescission of the purchase; and the fact that he may thereafter make a new and valid purchase from the true owner, does not give him a basis of double amount.

Whatever loss may be sustained through a rescission must not be confused with the basis of the property if a new or supplemental purchase is made. We hold that the same is true in the instant case, where the result was attained by compromise, rather than by judgment. *Lyeth* v. *Hoey, supra.*

The petitioner has not here shown, either through its pleadings or evidence, the amount of the basis allowed to it with respect to Caldwell's conveyances in exchange for the shares of stock (designated by petitioner as "the base cost" of the real estate); but since it concedes that such basis was fixed by agreement of the parties in adjusting tax liabilities of prior years, we assume in the absence of evidence to the contrary that it was fixed in accordance with the statutory provisions that govern the basis of property acquired for stock, and that it reflected the amount which would be allowable under the statute if Caldwell's conveyances had been complete and valid. We think petitioner is entitled to no more; for whether the property interests were acquired solely from Caldwell, or partly from Caldwell and partly from his creditor who retained a right in the property, petitioner did not acquire a greater title or become entitled to a greater basis than that which reflected the entire property.

This conclusion accords with the holding of the Court of Appeals for the Ninth Circuit in *Murphy Oil Co.* v. *Burnet*, 55 F. 2d 17. There, the taxpayer had paid $1,200,000 in settlement of a suit that sought to rescind its purchase of oil properties on the ground of fraud; and it, like the present petitioner, claimed the right to add such settlement payment to its cost basis for the properties, and thereby make possible increased depletion allowances. In denying the right to such addition, the court said:

Moreover, in fixing the tax of the petitioner it already had been given the benefit of the full market value of the property as of March 1, 1913, upon the theory that it owned the property at that time. The $1,200,000 therefore was not only not a proper deduction from the income because it was a capital expenditure but it should not be added to the capital in determining the depletable base, for that had already been fixed by the statute as a fair market value of the property on March 1, 1913, and this estimated value included the entire property, including, of course, the interest therein which was still owned by Domingo Bastanchury and which was in effect subsequently acquired by petitioner by the payment of the additional purchase money. * * *

We hold that the same is true here.

But there are still other reasons why petitioner's claim to an increased basis for the property cannot be allowed. When the exchange of stock for real estate was authorized at the first meeting of petitioner's board of directors, Caldwell participated on both sides of the transaction—on the one hand as the seller, and on the other hand both as president and as chairman of the directors (composed entirely of members of his family) who acted for petitioner

as the purchaser. Caldwell then transferred the shares of stock, without consideration, to individual trustees for the benefit of members of his family; and shortly thereafter he was insolvent. By reason of this relationship of the parties, and Caldwell's control over petitioner which is indicated by the entire record of this case, it must be assumed that the infirmities of Caldwell's conveyances were known to the petitioner, and that the risk of the attack on these conveyances which followed was assumed at the time the stock was issued. As was said by the Supreme Court of Tennessee in *Dale* v. *Thomas H. Temple Co.*, 186 Tenn. 69, 208 S. W. 2d 344, which is reviewed in connection with the second issue of the present case "it is clear that since the executive officers and directors of the Caldwell corporations were the same as the individual Caldwells, the design and intent of the corporation cannot be distinguished from the design and intent of the individual." In such situation, the amount paid to the creditor represents nothing more than satisfaction of a liability impliedly or constructively assumed as a part of the original cost, for which an agreed basis has already been allowed.

Moreover, it cannot here be determined that petitioner is correct in its position that the payment to the creditor was solely for protection of its real estate, even though we have predicated our foregoing holding on the assumption that such position was correct. The equity suit was brought not only against petitioner but also against all trustees and beneficiaries who had interests in the shares of the stock which had been issued for the conveyances; and one of the creditor's prayers for relief was that if the conveyances were not rescinded, then such stock should be attached and applied in satisfaction of the judgment. The compromise of the litigation was in reality a general settlement of all claims involved, and it benefited all of the numerous parties defendant. To the extent that the settlement payment removed the challenge to the stock, it represented not only a satisfaction of Caldwell's indebtedness but also a distribution or return of capital for the benefit of petitioner's stockholders; and no basis adjustment is proper. The courts have held that where amounts have been paid under a general settlement, they will not, in the absence of other evidence, be related to any particular claim. *Raytheon Production Corporation*, 1 T. C. 952, affd. 144 F. 2d 110, certiorari denied 323 U. S. 779.

Since the money paid in settlement of the litigation is not a proper addition to petitioner's basis for its real estate, neither are the costs of the litigation nor the expense of the title guaranty policy (which in any event was only an expense of borrowing money). We therefore approve the Commissioner's determinations with respect to the first issue.

*Second Issue.* The second question presented is whether petitioner is entitled to deduct, either as a loss or as an ordinary and necessary expense of its business, the sum of $123,116.81 which it contributed toward satisfaction of the judgment obtained by the receiver of the Apex corporation against it and several other defendants; and also whether it may likewise deduct as a business expense, the $1,500 which it paid to an attorney in connection with settling a dispute among the several defendants as to the amount each should contribute toward payment of the judgment.

It is our opinion that the answer to these questions must depend primarily on whether or not the liabilities, which were satisfied, arose out of and were incident to the normal and ordinary conduct of petitioner's business. The character and amounts of those liabilities are disclosed in the opinion of the Supreme Court of Tennessee (*Dale* v. *Thomas H. Temple Co., supra*), pursuant to which the judgment was entered, to have been as follows:

$73,718.05 against all the members of the Caldwell group including the present petitioner, and also against all except two members of the Potter group, for monies fraudulently taken from Apex and diverted to the Potters in payment for the controlling stock interest in Apex which certain members of the Caldwell group had purchased.

$45,000.00 against all the same defendants, for liability in connection with an account owed to Apex by a corporation controlled by the Caldwells, which the several defendants had, through fraud and conspiracy, caused to be cancelled.

$65,773.05 against all members of the Caldwell group, for liability in connection with purported salaries fraudulently withdrawn from Apex by the individual Caldwells during the operation of Apex. The Supreme Court of Tennessee approved the findings of the lower courts that "the only service that the Caldwells rendered Apex was the wrecking of that corporation by misappropriation of its corporate assets for their personal benefit."

$4,440.00 against all members of both the Caldwell and Potter groups, for liability in connection with rents fraudulently paid out of Apex and diverted to pay attorney's fees owed by certain of the Caldwells.

6% interest on the above judgments from accrual of the cause of action, rather than the normal 3% interest, because such judgments stemmed from fraud.

There is no evidence in the instant proceeding which shows, or even tends to show, that any of the transactions from which such liabilities arose were in any way related to petitioner's normal and legitimate business operations; or that they had any business purpose relating to such operations. Petitioner relies rather on argument: That all transactions of a corporation must be deemed to be "business transactions"; that except in the case of penalties imposed for offenses against the Government, all liabilities determined against a corporation in civil actions for fraud and conspiracy must be regarded as liabilities for "business tort"; and that payments made in

discharge of such liabilities are deductible for income tax purposes as losses or as ordinary and necessary business expenses. We do not agree.

Section 23 of the Internal Revenue Code (1939) provides, in subparagraph (a) (1) thereof, for the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business"; and in subparagraph (f) thereof, it provides for deduction by a corporation of "losses sustained during the taxable year and not compensated for by insurance or otherwise." The legislative history of these provisions, and also the opinions of the courts, indicate clearly that the benefits of the deductions thus provided are available only when the particular expense or loss is incurred in connection with transactions that are pertinent to the conduct of the taxpayer's business.

As regards the legislative history, it is to be observed that, shortly after the adoption of the Sixteenth Amendment when section II of the Act of October 3, 1913, was in the process of being adopted, Congressman Hull, a member of the Ways and Means Committee, in explaining the counterpart of the above-mentioned section 23 (f), said (50 Cong. Rec., p. 506) :

As to losses, these provisions primarily contemplate allowance for losses *growing out of the trade or business from which the taxable income is derived, and generally termed trade losses,* as distinguished from losses of capital or principal or losses incurred entirely apart from business transactions from which income is derived. *A similar rule governs deductions for expenses.* [Emphasis supplied.]

In *Kornhauser* v. *United States*, 276 U. S. 145, which is one of the earlier and most frequently cited cases on this subject, the Supreme Court, after reviewing the holdings in several cases including one which involved a corporation, said:

The basis of these holdings seems to be that where a suit or action against a taxpayer is *directly connected with,* or, *as otherwise stated * * *, proximately resulted from, his business,* the expense incurred is a business expense * * * [Emphasis supplied.]

*Deputy* v. *DuPont*, 308 U. S. 488, is another much cited case on this subject. There the Court stated:

One of the extremely relevant circumstances is the nature and scope of the particular business out of which the expense in question accrued. *The fact that obligation to pay has arisen is not sufficient.* It is the kind of transaction out of which the obligation arose and its normalcy in the particular business which are crucial and controlling. [Emphasis supplied.]

*Hales-Mullaly, Inc.*, 46 B. T. A. 25 (1942), affd. (C. A. 10) 131 F. 2d 509, involved facts and issues very similar to those here present. There the taxpayer corporation and certain individuals, including all but one of its incorporators, directors, and officers, were made defendants in a tort action filed by another corporation in which it was

charged that said incorporators, officers, and directors had conspired to ruin the other corporation's business, had acquired by fraudulent means the other corporation's wholesale department, goodwill, and franchises, and had thereafter used the taxpayer corporation as an instrumentality to operate and hold the same. This suit was settled under an arrangement whereby the taxpayer corporation, without participation by the other defendants, paid $16,585.33 in discharge of certain obligations of the other corporation, plus $35,202.75 for attorneys' fees and expenses incurred in connection with the litigation. The Board of Tax Appeals, in denying the taxpayer corporation's right to deduct such amounts as ordinary and necessary expenses of its business, said:

> It is unnecessary to pass upon each of petitioner's contentions. Suffice it to point out "the fact an obligation to pay has arisen is not sufficient." *Deputy* v. *duPont, supra.* The transaction which gives rise to it must be of common or frequent occurrence in the type of business involved, *Welch* v. *Helvering, supra*— "normal, usual or customary"—"and its normalcy in the particular business" is "crucial and controlling." *Deputy* v. *duPont, supra.* If petitioner had been sued upon an account, or for damages sustained through the negligent operation of one of its delivery trucks, for example, there would be but slight question of normalcy; but it is far from "normal, usual or customary" for a mercantile corporation to be sued for acts committed by its incorporators prior to its organization. Moreover, we think it is also material, and incumbent upon petitioner to show, that the suit resulted, at least in part, from some action of the corporation either in, or incidental to, its ordinary business. Cf. *Wolf Manufacturing Co.*, 10 B. T. A. 1161; *W. S. Dickason*, 20 B. T. A. 496. No such showing, however, has been made. Petitioner's contention that expenditures made by a mercantile business in defending a suit for damages on account of *any* kind of a transaction is clearly contrary to the decisions, especially *Deputy* v. *duPont.* This case is controlling and, since, in our judgment, petitioner has failed to prove that the expenditures were "ordinary", respondent's determination must be upheld.

The *Hales-Mullaly* case was followed by this Court in *Levitt & Sons, Inc.*, 5 T. C. 913, 929 (1945), affd. (C. A. 2, 1947) 160 F. 2d 209; and the Tenth Circuit's opinion affirming it has been cited with approval in *Boulder Building Corporation* v. *United States*, (W. D., Okla., 1954) 125 F. Supp. 512 at footnote 8; and *Knight-Campbell Music Co.* v. *Commissioner*, (C. A. 10, 1946) 155 F. 2d 837. It is to be observed also that the Tenth Circuit, in its opinion, further held the expenses involved did not qualify as a loss under section 23 (f) of the Code, for it said (131 F. 2d 509, 512) :

> It suffices to say without elaboration that expenditures made in the compromise of litigation and for attorneys fees and other expenses in connection with the litigation do not come within the ambit of that section. Kornhauser v. United States, supra.

The petitioner has indicated that it relies upon *Helvering* v. *Hampton*, 79 F. 2d 358, and *Commissioner* v. *Heininger*, 320 U. S. 467. Those cases, however, are distinguishable on their facts; for there

the liabilities were for irregularities in handling a lease and in conducting a sale, respectively, which were incident to the normal business operations of the taxpayer.

Although it may be difficult, in certain circumstances, to determine whether a particular loss or expense has been incurred in the normal and legitimate operations of a business, no such difficulty exists here. The petitioner has conceded that it derived no business benefit whatever from the fraudulent conspiracies for which it and the other defendants were held liable; and the entire opinion of the Supreme Court of Tennessee under which the judgments were entered, leaves no doubt that the transactions from which the present liabilities stemmed had no normal or proper relationship to petitioner's normal and legitimate business operations.

We hold that the amount contributed by petitioner toward satisfaction of the judgment in the Apex case is not deductible under either section 23 (a) (1) (A) or section 23 (f) ; and we also hold, for similar reasons, that the attorney's fees incurred in settling the dispute among the several defendants as to the amount each should pay toward satisfaction of the judgment, are not deductible.   By reason of these holdings, it is unnecessary to pass on the question of whether, if said amounts were deductible, they would create a "net operating loss" within the meaning of section 122, with carry-overs to subsequent taxable years.

*Third Issue.*   The third issue is whether the respondent erred in computing petitioner's gain from the sale in 1947 of shares of stock of Nashville Union Stock Yards, Inc., by use of a zero basis.   We think that, in the unusual circumstances here present, the employment of such basis was proper.

It is conceded that petitioner acquired the shares from the wife of James E. Caldwell without delivery of any consideration; and, since the petitioner has abandoned its claim to any loss, we are concerned only with the basis for determining its gain, if any.   Such basis is controlled by section 113 (a) (2) of the Internal Revenue Code of 1939 which, so far as here pertinent, provides as follows:

(2) GIFTS AFTER DECEMBER 31, 1920.—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift * * *.  If the facts necessary to determine the basis in the hands of the donor or the last preceding owner are unknown to the donee, the Commissioner shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof.  If the Commissioner finds it impossible to obtain such facts, the basis in the hands of such donor or last preceding owner shall be the fair market value of such property as found by the Commissioner as of the date or approximate date at which, according to the best information that the Commissioner is able to obtain, such property was acquired by such donor or last preceding owner.

Here, the parties have stipulated that there are no records in existence with respect to any price that may have been paid for the stock, either by Mrs. Caldwell or by her husband. The evidence further reveals that the donor, Mrs. Caldwell, is deceased; and that, even after diligent search by an officer of petitioner and also by an officer of the corporation that issued the stock, it cannot be determined how or when she acquired the shares, or who was the last preceding owner by whom they were not acquired by gift. It is obvious that, in the absence of any evidence as to when such preceding owner acquired the shares (which may have been at any time subsequent to the incorporation of the issuer in 1919), it is impossible to determine fair market value as of such unknown date. Thus we have here not only a total absence of evidence from which to determine basis under the above statute, but also conceded inability to assemble any such evidence.

*Burnet* v. *Houston*, 283 U. S. 223, involved a similar situation where the taxpayer was unable to obtain evidence with which to meet the provisions of the statute that controlled the basis. There the court said:

The impossibility of proving a material fact upon which the right to relief depends simply leaves the claimant upon whom the burden rests with an unenforceable claim, a misfortune to be borne by him, as it must be borne in other cases, as the result of a failure of proof. * * *

To the same effect see *Elsie SoRelle*, 22 T. C. 459, 471; *Lime Cola Co.*, 22 T. C. 593, 601.

The petitioner has suggested that the use of a zero basis is arbitrary; that under the above-quoted statute respondent had a duty to determine fair market value; and that therefore, the misfortune resulting from the inability to obtain evidence, must fall on him rather than the petitioner. We do not agree. If respondent's determination may be termed "arbitrary," it was not capricious, and did not result from any disregard of evidence. If he had determined any other basis for the shares, it indeed would have been both arbitrary and capricious, and could not have been supported. The law does not expect, or require, anyone to do the impossible. Since neither petitioner nor this Court has found it possible to determine any positive basis under the statute, the respondent cannot properly be charged with dereliction for not doing better.

Also the provisions of section 113 (a) (2) pertaining to basis do not purport to, and do not, control the burden of proof in proceedings before this Court. A taxpayer cannot establish error in a determination of the Commissioner as to basis, where he presents no evidence whatever to establish a different basis.

In arriving at our decision on this issue, we have considered *Helvering* v. *Taylor*, 293 U. S. 507, and *Cohan* v. *Commissioner*, 39 F. 2d 540, and have concluded that neither is here applicable. In the

*Taylor* case, it was held that, where the taxpayer had shown the Commissioner's determination to be without rational foundation, arbitrary, and excessive, the case should be remanded for further hearing, notwithstanding that the taxpayer had not established what the tax would be under the correct theory; but here it has not been shown that the Commissioner's determination was erroneous, and even a further hearing would not make possible the determination of any basis other than that which he used. In the *Cohan* case, it was held that where the taxpayer had incurred substantial expense for entertainment and travel in connection with his business but the amounts could not be definitely ascertained, then the deductions allowable for such items should be estimated from such evidence as could be assembled; but here we must determine the cost or other statutory basis of stock in the hands of some unknown and unascertainable person who had not acquired it by gift, or the fair market value of the stock on the unknown and unknowable date when such unknown and unascertainable person acquired it. In this circumstance *Burnet* v. *Houston*, *supra*, controls; and we approve the Commissioner's determination.

Reviewed by the Court.

> *Decision will be entered for the respondent.*

VAN FOSSAN, *J.*, dissents.

———

BRUCE *J.*, dissenting: Preliminarily I would like to point out, as was done by the Supreme Court in *Commissioner* v. *Wilcox*, 327 U. S. 404, that "Moral turpitude is not a touchstone of taxability," and that no "fall-out" from the "cloud" created by some of the questionable practices of petitioner's officers should be allowed to permeate our thinking respecting the legal issues involved herein. I would also like to restate in more simple form the issues involved, as follows:

1. Whether the Commissioner correctly determined that petitioner could not capitalize the cost of settling a suit which represented a cloud on its title to certain real property.

2. Whether the Commissioner correctly determined that petitioner could not deduct a payment in satisfaction of its share of a tort judgment and related attorney's fees.

3. Whether the Commissioner correctly determined that petitioner realized gain to the extent of the full sale price of certain stock which was acquired by gift from a donor whose basis is unknown.

*First Issue.* The first issue involves petitioner's right to capitalize the amount paid to settle an action brought to partially annul and rescind a conveyance by virtue of which petitioner claimed title to certain real property. The theory of the settled action was that the conveyance was a transfer in fraud of the grantor's creditors. The

conclusion seems inescapable, and the majority opinion does not hold otherwise, that the settled action represented a cloud on the petitioner's title. It is well settled that the cost of defending and settling such an action "is a capital expenditure representing additional cost of the property." *Murphy Oil Co.*, 15 B. T. A. 1195, 1201, affirmed on this point (C. A. 9) 55 F. 2d 17. Cf Regs. 111, sec. 29.24–2; *Agnes Pyne Coke*, 17 T. C. 403, affd. (C. A. 5) 201 F. 2d 742; *Levitt & Sons, Inc.*, 5 T. C. 913, 924–930, affd. (C. A. 2) 160 F. 2d 209.

The majority opinion attempts to draw a distinction in the instant case on the ground that the settled action challenged the validity of the original conveyance to petitioner. But the same can be said of virtually any suit representing a cloud on title whether it be predicated upon an alleged prior deed, mortgage, tax lien, or other right in the property attaching prior to the conveyance to the taxpayer. Unless the petition in the pending action alleges that the taxpayer's grantor did not or could not convey a valid title, no cause of action would be stated. Furthermore, no reason appears for not allowing a taxpayer to capitalize the expense of removing a cloud on its title because of possible knowledge of the cloud at the time of the original conveyance.

The majority opinion holds that petitioner acquired a basis in the entire property at the time of the original conveyance. This holding seems to ignore the entire rationale behind the rule allowing the capitalization of the expense of removing a cloud on title. The amount paid by a purchaser of property becomes the basis of only that interest in the property which is acquired. An additional amount later paid to remove a cloud on the title is considered as payment for another outstanding interest in the property which increases both the purchaser's total interest in the property and its cost basis. Here petitioner acquired Caldwell's title to the property subject to the claims of Caldwell's creditors. The amount paid or the value of the stock given in exchange for the property became the basis of only that interest in the property which was acquired. When petitioner compromised the creditor's bill, it extinguished the creditor's rights, thereby increasing its own interest in the property as well as its cost basis.

The majority opinion states that petitioner is not entitled to a greater basis than that which reflected the entire property. No fault could be found with this statement if the entire basis is to be measured by the property acquired. Cf. *Murphy Oil Co.* v. *Burnet*, 55 F. 2d 17, cited in the majority opinion. Here, however, the proper basis is made up of petitioner's cost. Except to the extent the value of the property received is considered in determining the value of the property given in exchange, a cost basis is in no way affected by the extent of the property interest acquired. Petitioner's cost basis was the fair

market value of the stock given for Caldwell's interest (*Hens & Kelly, Inc.*, 19 T. C. 305, 321), together with the amount paid the creditor for its interest.

The basis of the property interest acquired from Caldwell was fixed by an agreement of the parties. The majority opinion evidently assumes that in agreeing to the basis of this interest respondent placed too high a value on the stock, which determined petitioner's cost basis, because of a mistaken conception of the property interest acquired from Caldwell. If such were the case the fair market value of the stock should have been lowered and the basis adjusted downward; but the fact that respondent has erroneously agreed to an excessive value for stock, representing the cost of one interest in property, is not a valid reason for disallowing the capitalization of the amount paid for another interest in property.

Furthermore respondent has neither determined nor contended that the basis fixed by the agreement was erroneous but in fact has apparently conceded that it was correct. Under these circumstances it would seem highly improper for this Court to look behind that agreement and to assume that the basis agreed to was in error where the record does not even disclose the amount of the agreed basis or contain a scintilla of evidence indicating that it was erroneous. The holding in the majority opinion is apparently based upon the wholly unsupported fear that unbeknownst to the respondent he has made a mistake in agreeing to the cost of the interest acquired from Caldwell. The majority opinion attempts to counteract any such mistake by disallowing the capitalization of the cost of an additional interest in the property acquired 16 years later. This approach calls to mind the adage, "Two wrongs don't make a right," to which could be added the caveat, "especially where there is only an unfounded fear that the first wrong has been done."

The majority opinion states, as an alternative ground for its holding, that the settlement also benefited petitioner's class B stockholders and that, in the absence of other evidence, no part of the settlement can be allocated to the settlement of the attack on petitioner's title. Respondent has not raised this point, and the stipulation as well as the entire record indicates that petitioner was settling the action against it in order that it might remove the *lis pendens* and sell the property. Furthermore, the property or land was worth far more than the amount of the settlement. If the holding in the majority opinion is correct, that a compromise is a *pro tanto* confession of judgment, then by settling the action petitioner conceded that the land was subject to the creditor's claim and this concession removed all challenge to the stock which the complaint prayed be sold only if the claim was not paid out of the proceeds from the sale of the land.

For the sake of completeness I would also point out that respondent's contention that the settlement was made in order to benefit James E. Caldwell by discharging his personal liability is manifestly untenable as James E. Caldwell had died 3 years prior to the settlement, leaving no assets and substantial liabilities. Likewise without merit is respondent's contention that petitioner did not affirmatively disprove the allegations in the complaint filed by the First National Bank in St. Louis stating that the property was conveyed to petitioner in order to defraud the creditors of James E. Caldwell, and that petitioner should not be allowed to capitalize the cost of removing the cloud on its title arising out of a fraudulent transaction. Whether the allegations were true or false is in my opinion immaterial to the issue presented herein.

I would hold that the petitioner clearly had the right to capitalize the expenditures as an addition to cost in the instant case.

*Second Issue.* The majority opinion holds that petitioner is not entitled to a deduction, under either section 23 (a) or section 23 (f) of the Internal Revenue Code of 1939, for $123,116.81 paid in satisfaction of its share of a final judgment against it together with $1,500 in attorney fees. The basis for the holding appears to be that the transactions which gave rise to the judgment were not "in any way related to petitioner's normal and *legitimate* [emphasis supplied] business operations."

Judgment was rendered against petitioner and other defendants in a case styled *Dale* v. *Thomas H. Temple Co.*, 186 Tenn. 69, 208 S. W. 2d 344, in the approximate amount of $266,000. Subsequently, after negotiations with the other defendants known as the "Potter group," the petitioner paid $123,116.81 as its share of the judgment and deducted the sum paid in its 1948 income tax return.

Respondent determined that the judgment represented a debt of individual stockholders of petitioner and for that reason disallowed the deduction. The facts, however, do not sustain respondent's determination. It is undoubtedly true that the beneficial owners of a minority of petitioner's stock were largely responsible for the perpetration of the fraud upon Apex and that petitioner's role in the conspiracy was relatively minor. Nevertheless the Supreme Court of Tennessee held petitioner liable as a *joint tort-feasor* for the full amount of the judgment. As the owner of a substantial amount of property which could easily be subjected to execution and as the only solvent member of the Caldwell group, petitioner's only alternative was to pay. It is not the petitioner's culpability but his liability that determines his right to the deduction. *North American Investment Co.*, 24 B. T. A. 419; *Helvering* v. *Hampton*, 79 F. 2d 358.

Whether or not the transactions involved were *legitimate* is unimportant unless the allowance of the deduction would frustrate sharply

defined national or State policies. The majority opinion has not found that to be, and in fact it is not, the case here. Even though the acts committed prior to the judgment were "nonmoral," wrongful, or unethical, there would be no frustration of public policy in allowing deduction of the amount paid in satisfaction of a civil judgment making restitution for such acts. *Commissioner* v. *Heininger*, 320 U. S. 467; *Helvering* v. *Hampton, supra.*

Section 23 (a) permits the deduction of "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." The argument that the expenditure was not incurred "in carrying on any trade or business" of petitioner because no corporate purpose was served by the diversion or misappropriation of the funds of Apex by the individual Caldwells is precluded by the findings and opinion of the Supreme Court of Tennessee in the case of *Dale* v. *Thomas H. Temple Co., supra,* holding that the petitioner was liable for the full amount of the judgment as a *joint tort-feasor.* Petitioner was organized to carry on a general investment business. The Supreme Court of Tennessee found that James E. Caldwell & Company was the parent corporation and the other "Caldwell Corporations" which were involved in the sale of the Apex stock were mere dummies wholly owned and completely dominated in the entire matter by the parent corporation. It further found that James E. Caldwell & Company "was incorporated to do the type of business that the sale of Apex stock represented."

The argument that the payment on the judgment by petitioner was not a "necessary" expense is likewise untenable. The judgment of the State court having become final, petitioner, being solvent, had no choice but to see that the judgment was paid or to suffer an execution to be levied against it.

The majority has held that *Helvering* v. *Hampton* and *Commissioner* v. *Heininger*, both *supra*, are distinguishable on their facts, stating that there the liabilities were for "irregularities" in handling a lease and in conducting a sale, respectively, which were incidental to the normal business of the taxpayer. In my opinion both cases are particularly applicable under the facts presented in the instant case. As was said by the Supreme Court in the *Heininger* case, in holding as "ordinary and necessary" the expenses of unsuccessfully litigating a suit to set aside a fraud order of the Post Office Department,

It is plain that respondent's legal expenses were both "ordinary and necessary" if those words be given their commonly accepted meaning. * * * Surely the expenses were no less ordinary or necessary than expenses resulting from the defense of a damage suit based on malpractice, or *fraud*, or breach of fiduciary duty. Yet in these latter cases legal expenses have been held deductible without regard to the success of the defense. [Emphasis supplied.]

The circumstances of the instant case are more nearly comparable to those which existed in *Helvering* v. *Hampton, supra,* cited with approval by the Supreme Court in the *Heininger* case (320 U. S. 472, footnote 6). In that case the deduction claimed was for the amount paid in settlement of a judgment against the taxpayer-lessor and in favor of a lessee upon the cancellation of a lease, for *fraud* in negotiating for the lease. In the course of its opinion affirming an order of the Board of Tax Appeals allowing the deduction, the Ninth Circuit Court of Appeals said:

> Even if restitution for wrong in a private business transaction were regarded as infected by the wrong it seeks to cure, there are no decisions holding that a deduction for the amount restored should be denied. * * *
>
> *    *    *    *    *    *    *
>
> We cannot agree that private wrongdoing in the course of business is extraordinary within the meaning of the taxing statute allowing deductions for "ordinary and necessary expenses." The statute itself makes no such exception, and since it is construable as we have interpreted it, that construction against the collector is required by the long-established rule of interpretation in taxing statutes. *Miller* v. *Standard Nut Margarine Co.,* 284 U. S. 498, 508, 52 S. Ct. 260, 76 L. Ed. 422.
>
> In the instant case we hold that, even if unethical conduct in business were extraordinary, restitution therefor is ordinarily expected to be made from the person in the course of whose business the wrong was committed. It is therefore deductible under § 214 (a) (1).

In my opinion *Hales-Mullaly, Inc.,* 46 B. T. A. 25, affd. (C. A. 10, 1942) 131 F. 2d 509, upon which the majority relies is not in point. That case involved a suit arising out of acts committed prior to taxpayer's organization. The Tenth Circuit Court of Appeals held that the amounts paid by the corporate taxpayer in settlement of pending litigation to recover damages sustained as a result of an alleged conspiracy of individuals related to the corporation were not deductible as ordinary and necessary business expenses because such a liability was not one reasonably to be anticipated in the taxpayer's business. It will also be observed that the amounts there sought to be deducted were paid in settlement of pending litigation whereas the amounts here sought to be deducted were in payment of a judgment which had become final. In any event, on the question here presented, the *Hales-Mullaly* case is believed to be of dubious value as a precedent today, since on the main point decided similar reasoning therein relied upon was later rejected by the Supreme Court in *Commissioner* v. *Heininger,* (1943) *supra.* See also *Kanne* v. *American Factors,* 190 F. 2d 155, 160, footnote 2, criticizing the reasoning of the *Hales-Mullaly* case as "without merit."

As stated above, the majority opinion also holds that section 23 (f), which allows the deduction by corporations of "losses sustained during the taxable year and not compensated for by insurance or otherwise," does not apply because it was not shown that the transactions giving

rise to the judgment were incident to the normal and ordinary conduct of petitioner's business. Unlike section 23 (a) (1) (A), Congress has not made this a requirement of section 23 (f), and making it a prerequisite to a deduction under that section would appear wholly unwarranted. Cf. 1 Montgomery, Federal Taxes—Corporations and Partnerships 1948–1949, p. 638; Tye, "Bad Debts and Other Losses," 6th Ann. N. Y. U. Tax Inst. 695 (1947). See also *North American Investment Co., supra; Champlain Coach Lines* v. *Commissioner*, 138 F. 2d 904.

The conclusion I have reached with reference to the treatment of the $123,116.81 makes unnecessary a determination of the question whether the sum paid was deductible as a *loss* under section 23 (f). See, however, *William Zeigler, Jr.*, 5 T. C. 156; *Robert S. Farrell*, 44 B. T. A. 238; *Charles R. Stuart*, 38 B. T. A. 1147, including the administrative rulings cited therein; *L. Heller & Son, Inc.*, 12 T. C. 1109. And compare this Court's opinion in *Adam, Meldrum & Anderson Co.*, 19 T. C. 1130, which was reversed (C. A. 2) 215 F. 2d 163, certiorari denied 348 U. S. 913, on the ground that the payment in that case should be capitalized and not for the reason that it would otherwise be erroneous to allow the deduction as a loss under section 23 (f).

I would accordingly hold that the payment by petitioner of its share of the judgment awarded against it by the Supreme Court of Tennessee is deductible in full under the provisions of section 23 (a). For similar reasons I would hold that the $1,500 in legal fees expended by petitioner during the negotiations with the Potter group to determine what share of the judgment would be paid by each, is deductible as an ordinary and necessary business expense under section 23 (a). *Helvering* v. *Hampton* and *Commissioner* v. *Heininger*, both *supra.*

*Third Issue.* The majority opinion has upheld respondent's determination that petitioner realized gain to the full extent of the sale price of the Stock Yards stock. Section 111 (a) provides that "The gain from the sale or other disposition of property shall be the excess of the amount realized over the adjusted basis provided in section 113 (b) for determining gain * * *." Section 113 (b) refers to section 113 (a) which provides that in the circumstances here present the basis "*shall be* the fair market value of such property [the stock] as found by the Commissioner as of the date or approximate date at which according to the best information that the Commissioner is able to obtain, such property was acquired by such donor or last preceding owner." (Emphasis supplied.) Therefore, under the pertinent statutory provisions a basis is a prerequisite for determining gain on the sale of property (cf. *Burnet* v. *Houston*, 283 U. S. 223), and the property or stock in question could not have a basis to exceed until the Commissioner made the proper finding.

The majority opinion states that it was impossible for the Commis-

sioner to find the fair market value of the stock, and therefore it was permissible for him to substitute a basis of zero for the basis provided in the statute. In *Burnet* v. *Houston, supra,* the Supreme Court said:

We cannot agree that the impossibility of establishing a specific fact, made essential by statute as a prerequisite to the allowance of a loss, justifies a decision for the taxpayer based upon a consideration only of remaining factors which the statute contemplates. The definite requirement of section 202 (a) (1) of the act is not thus easily to be set aside. * * *

Similarly, the impossibility of respondent finding a specific fact, made essential by the statute as a prerequisite to the determination of *gain,* which finding respondent alone is authorized to make, does not justify the respondent in substituting a basis of zero for the basis provided by statute. The definite requirement of section 113 (a) (2) of the 1939 Code is not that easily to be put aside. Where the taxpayer is unable to prove the amount of his statutory basis, he is not entitled to a *loss;* where the Commissioner is unable to make a finding which is necessary to establish the statutory basis, he is not justified in determining a *gain.*

The holding in the majority opinion that the petitioner has the burden of proof is clearly correct, but its holding with regard to the factors petitioner must prove appears contrary to the terms of the statute. Petitioner has sustained its burden because the record shows that the Commissioner has not made the finding necessary to establish a basis without which there can be no gain. Petitioner is not required to prove the amount of a basis which, prior to a finding by the Commissioner, is nonexistent. A distinction must be made between an unknown basis and a basis which is nonexistent because the Commissioner has failed to perform his statutory duty.

Moreover, there is nothing in the record which would indicate that it was impossible to find the fair market value of the stock around the time it was acquired by the donor or last preceding owner. One of petitioner's officers testified on cross-examination that he had seen a record that the stock was acquired from the First Savings Bank and Trust Company. Whether the stock was acquired at that time by the donor or was acquired by the donor's husband and later given the donor is immaterial. In either case the pertinent date is the time the stock was acquired from the bank. There is nothing in the record to indicate that the time of this transfer could not have been ascertained if the Commissioner had made any attempt to carry out the duty which the statute imposes upon him.

If the Commissioner had attempted to carry out his duty, he probably would have found that there was no gain. The statement of petitioner's counsel indicates that the stock was acquired sometime during the 1920's and the testimony of one of petitioner's officers would indicate that the stock was worth at least $10 per share through-

out those years. If the Commissioner had found such to be the case, he could have stopped there as the basis for determining gain would equal or exceed the sale price. Instead of attempting to make a finding, the Commissioner arbitrarily treated the full amount of the sale price of $10 per share as gain. In no event could the gain have exceeded the difference between the sale price and the lowest fair market value of the stock between 1919, when the corporation was organized, and 1932, when the gift was made and, undoubtedly, the value of the stock was never lower than in 1932 when its fair market value was probably only slightly less than its book value of $3.40 per share. (See petitioner's Exhibit 19.)

In my opinion respondent's determination of a deficiency herein, based upon the sale of the above stock, is without any foundation and is clearly arbitrary where it appears he made no finding of fair market value as of the pertinent date, the record contains no evidence whatever upon which such a finding could be predicated, and, in fact, contains no evidence whatever even as to what the pertinent date was, that is, the date the stock was *acquired by the donor* or last preceding owner by whom it was not acquired by gift. Neither party has called attention to any authority construing the pertinent language of section 113 (a) (2). The majority has referred to none, and an extensive research has failed to reveal any. In my opinion, however, it is clear that where the statue places upon the Commissioner the duty of making a finding necessary to the establishment of a tax liability and his determination contains no such finding, the decision of the Commissioner cannot be regarded as making a prima facie case. See *First National Bank of Boston* v. *Commissioner*, (C. A. 1) 63 F. 2d 685, 693. The pertinent language of section 113 (a) (2) contemplates action by the Commissioner, not the taxpayer or the courts. Cf. *Harden* v. *Commissioner*, (C. A. 10, May 17, 1955) 223 F. 2d 418; *Cornett-Lewis Coal Co.* v. *Commissioner*, (C. A. 6) 141 F. 2d 1000, 1004. The petitioner is not required to show the correct amount of its gain. As was said in *Helvering* v. *Taylor*, 293 U. S. 507, "The fact that the Commissioner's determination of a deficiency was arbitrarily made may reasonably be deemed sufficient to require the Board [Tax Court] to set it aside."

I would accordingly hold that the determination by respondent of a tax deficiency herein based upon the sale of the 2,081 shares of stock in the National Union Stockyards, Inc., was arbitrary and cannot be sustained. *Helvering* v. *Taylor, supra; Durkee* v. *Commissioner*, (C. A. 6) 163 F. 2d 184; *Federal National Bank* v. *Commissioner*, (C. A. 10) 180 F. 2d 494.

For the foregoing reasons, I respectfully dissent from the opinion of the majority on all three of the issues presented.

ARUNDELL and JOHNSON, *JJ.*, agree with this dissent.