Stanley J. Prescott and Lucille Prescott v. Commissioner.
Prescott v. Commissioner
Docket No. 3393-66.
United States Tax Court
T.C. Memo 1969-76; 1969 Tax Ct. Memo LEXIS 219; 28 T.C.M. (CCH) 435; T.C.M. (RIA) 69076; April 17, 1969, Filed *219 Held: Theft loss deduction limited to property which petitioners established had been stolen and for which basis for determining loss has been shown. Brian C. Rappaport, for the petitioners. John B. Murray, Jr., for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined a deficiency in the petitioners' 1961 income tax in the amount of $20,050.54. The issue for decision in this case is whether the petitioners may deduct certain claimed theft losses. Findings of Fact Some of the facts have been stipulated, and those facts are so found. The petitioners, Stanley J. Prescott and Lucille Prescott, are husband and wife, whose legal residence was in Great Neck, New York, at the time the petition was filed in this case. They filed their 1961 joint Federal income tax return, using the accrual method of accounting, with the district director of internal revenue, Brooklyn, New York. On December 17, 1961, the petitioners discovered that their home had been burglarized and various items of property therein were either stolen *221 or damaged. They claim that the stolen property included the following items of uninsured jewelry. A. 14K gold antique lapel watch with gold chain and bar B. One pair of platinum earrings C. One platinum ring D. One platinum diamond brooch E. One platinum bracelet F. One platinum diamond watch G. One diamond solitaire with 16.50 Cts. of round diamonds H. One diamond necklace I. One gold stick pin The records of the police include two lists of stolen property submitted by the petitioners. The first of these lists, submitted on January 11, 1962, includes the items of jewelry designated A through F; the second list, submitted more than 2 years later on March 1, 1964, includes all nine items. All of the items of jewelry were obtained by the petitioners from Mr. 436 Prescott's mother, who is sometimes hereinafter referred to as the donor. Three items, B,C, and I, were acquired by the petitioners as inter vivos gifts; such items were originally given to the donor by her husband, and their cost is not known. The other items were obtained by the petitioners at the time of the donor's death in January 1958. Items B through I were valued by a qualified expert in *222 February 1958. The expert testified in this proceeding, and on the basis of his appraisal, we have concluded that the values of items B through I, as of February 1958, were as follows: B. One pair of platinum earrings
$ 1,600.00
C. One platinum ring
2,400.00
D. One platinum diamond brooch
8,500.00
E. One platinum bracelet
3,500.00
F. One platinum diamond watch
1,600.00
G. One diamond solitaire with 16.50 Cts. of round diamonds
12,000.00
H. One diamond necklace
11,500.00
I. One gold stick pin 950.00
$42,050.00 These items of jeselry were at least as valuable in 1961, at the time of the burglary, as they were in February 1958. No evidence has been offered as to the value of item A at the time of the donor's death. On their return for 1961, the petitioners claimed a theft loss of $46,384.71. The claimed loss consisted of $43,150.00 for the uninsured jewelry and $3,234.71 for other losses not compensated by insurance. Although the respondent has challenged the entire loss deduction claimed, the petitioners have offered no evidence in support of losses other than those arising from the alleged theft of the uninsured jewelry. Opinion The respondent *223 contends that the petitioners have failed to prove the theft of the uninsured jewelry, and that if such jewelry was stolen, no basis for determining loss has been established. We do not understand the respondent to question seriously the theft of items A through F, and we feel that the theft of these items has been adequately established. The evidence indicates that the petitioners once owned all of the jewelry for which they are claiming a deduction, and that there was a burglary in 1961 during which at least some of the jewelry was stolen. Items A through F were promptly reported as stolen to the police, and we have no reason to doubt the petitioners' testimony as to their theft. However, the evidence concerning the theft of items G through I is both unconvincing and contradictory. The first list of stolen property was submitted to the police 3 weeks after the burglary; the failure of this list to include the most valuable items alleged to have been stolen has not been satisfactorily explained. In his testimony, Mr. Prescott attempted to explain the omission on the ground that the omitted items were uninsured. However, this explanation is inconsistent with the listing of six *224 other items of uninsured jewelry. Furthermore, the fact that this valuable jewelry was uninsured was more, rather than less, reason to report promptly its theft to the police. The police were the petitioners' best hope of recovering the stolen property and thereby preventing its total loss. Mr. Prescott further contradicted his own testimony by stating that at the time he prepared the first list he was unaware of the theft of items G through I, because his wife, fearing his reaction, had not informed him about it. Mrs. Prescott's testimony was equally confused. She testified that she was so upset that she did not notice the theft of items G throuh I until 3 or 4 days after the burglary, and it was not until then that she notified her husband of the full extent of the loss. However, the first police report was not submitted until 3 weeks after the burglary, and well after the time when Mrs. Prescott said she discovered the loss. Her explanation was made more confusing by her testimony, at another point, that she did not notice the theft of items G through I until several weeks after the burglary when she went to her safe deposit box. This statement, of course, is inconsistent with *225 her testimony that she discovered the theft of these items within several days after the burglary. Moreover, we think Mrs. Prescott's natural reaction to the burglary would have been to determine within a short time whether her most valuable items of jewelry had been stolen. Although we can believe her statement that she was emotionally upset by the burglary for a long time thereafter, we are not convinced that such upset would prevent her from discovering the theft of these valuablee items of jewelry before the time the first report was submitted to the police. The petitioners' various stories are most unconvincing, and, therefore, we hold that the petitioners have failed to carry their burden of proving that items G through I 437 were stolen in 1961. Welch v. Helvering, 290 U.S. 111 (1933); Rule 32, Tax Court Rules of Practice.
Deductions for theft losses are limited to the lower of the fair market value of the stolen property, or the basis of such property, as prescribed by section 1011 of the Internal Revenue Code of 1965, [1] for determining loss from its sale or other disposition. Section 165(a), (b), and (e); sections 1.165-7(b)(1), *226 1.165-8(c), Income Tax Regs.; Helvering v. Owens, 305 U.S. 468 (1939). Under section 1011 and the provisions to which it refers, the basis for determining loss on the sale or disposition of property primarily depends on the way in which such property is acquired. The basis of property acquired by purchase is its cost. Section 1012. Property acquired from a decedent ordinarily has a basis equal to its fair market value on the date of death of the decedent. Section 1014(a). If property is acquired by gift, its basis for determining loss is the lower of its basis in the hands of the last preceding owner who had not acquired it by gift, or its fair market value at the time of the gift. If the basis to the last preceding owner not acquiring the property by gift is unknown, his basis is the fair market value, as determined by the respondent, of the property on the date or approximate date he acquired it. Section 1015(a). The evidence is clear that the petitioners acquired the stolen jewelry from Mr. Prescott's mother, but there is some conflict in the evidence as to how and when the acquisition occurred. *227 At one point, Mr. Prescott testified that all the jewelry was given to them before the donor's death, but at another time, he testified that they received only items B,C, and I before her death. In analyzing this testimony, we must bear in mind that these witnesses are not lawyers and are probably unaware of the precise legal meaning of the term "gift." Mr. Prescott explained that all the jewelry was kept in his safe deposit box, that his mother lived with them for a number of years prior to her death, that he supported her during much of that time, and that she indicated on a number of occasions that the petitioners were to receive her jewelry. It seems to us that the most reasonable interpretation of this evidence is that a completed gift of the three items of jewelry was made to the petitioners before the donor's death, but that the other items of jewelry were acquired by them either through an effective gift causa mortis or through inheritance from the donor's estate. Accordingly, the petitioners' basis for determining loss on items B,C, and I is governed by section 1015 and on the other items by section 1014. We are aware that no New York estate tax was paid on the donor's estate *228 and that the estate was never formally administered. However, in light of the other evidence, these facts do not persuade us that all the items of jewelry were acquired by the petitioners as inter vivos gifts. This case is distinguishable from Jane U. Elliott, 40 T.C. 304, 311-312 (1963), since in that case there was no evidence as to which items of jewelry were acquired by gift and which by inheritance. In conclusion, we have found that only items A through F of the uninsured jewelry were stolen in the 1961 burglary. Five of these six items were appraised as of February 1958. Although this valuation was not as of the precise time of the donor's death, it did occur at about that time, and we think it sufficiently accurate to establish the bases of items D through F which were acquired from a decedent within the meaning of section 1014, However, the petitioners have failed to furnish any proper evidence of the bases of item A, which was not valued as of the time of the donor's death, or of items B and C, which were acquired by inter vivos gift. No issue has been raised as to whether the respondent should have determined bases for the inter vivos gift items under section *229 1015(a). See James E. Caldwell E Co. v. Commissioner, 234 F. 2d 660 (C.A. 6, 1956), revg. 24 T.C. 597 (1955). Accordingly, we hold that the petitioners are entitled to deduct the 1958 value of items D through F, and that the remainder of the claimed loss, including that in respect of property other than the uninsured jewelry, must be disallowed. Decision will be entered under Rule 50. 438 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩