C. A. AND MOLLIE J. OSTROM, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 404–79.     Filed September 17, 1981.

C. A. Ostrom, pro se.
*Linda R. Dettery*, for the respondent.

HALL, *Judge*: Respondent determined a $9,878 deficiency in petitioners' 1976 income tax. In an amended answer, respondent increased the deficiency to $10,392. The sole issue is whether petitioners are entitled to deduct a payment made in

settlement of a judgment rendered against petitioner C. A. Ostrom for alleged fraudulent misrepresentations.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

C. A. (petitioner) and Mollie J. Ostrom,[1] husband and wife, resided in Palm Beach County, Fla., when they filed their petition.

In 1968, petitioner and two others formed Pan American Plumbing, Inc. (the company). Petitioner owned 10 percent of the company's stock and was its sole employee at the time of incorporation. During the entire life of the company, petitioner was its president and general manager. From 1968 through 1971, the company prospered.[2] During this time, the company's two other shareholders purchased some ranch property and an airplane and had the bills for these purchases sent to the company. By the end of 1971, as a result of these purchases and other obligations, the company was faced with a serious cash flow problem. Arrangements were made whereby a new investor, Carl Reagan, made two investments in the company[3] totaling $35,000. By virtue of these investments, Reagan acquired 75 percent of the company's stock by the end of 1972, and petitioner increased his ownership to 25 percent of the company.

Petitioner understood that $25,000 of the $35,000 invested by Reagan would be used to complete certain work in progress which would produce sufficient cash to keep the company in business. The company apparently completed some of the work, but that work failed to produce the expected cash flow. In March 1973, petitioner decided to terminate the business operations of the company. At that time, the company had approximately $140,000 to $150,000 in uncollectible receivables for completed work. The company also owed $52,000 in

---

[1] Mollie J. Ostrom is a petitioner solely by virtue of having filed a joint return with her husband.

[2] In fact, by the end of 1971, Pan American Plumbing had grown from a 1-employee business into an employer of more than 50 persons.

[3] During the negotiations with Reagan, petitioner made certain misrepresentations concerning the company's financial status.

back payroll taxes and owed significant amounts to various creditors. The company did not institute either Federal bankruptcy or State insolvency proceedings. Instead, both petitioners assumed and paid (over a period of time) all of the company's outstanding debts and taxes.[4]

In April 1973, petitioner delivered to Reagan's attorney most[5] of the company's financial records. On July 24, 1973, Reagan sued petitioner and one of the other former shareholders for fraudulent misrepresentation of the financial status of the company, on which Reagan allegedly relied to his detriment. In his complaint for damages, Reagan requested compensatory damages of $100,000.

On March 19, 1976, a Palm Beach County jury returned a verdict for Reagan and assessed damages of $25,000 against petitioner. On April 12, 1976, the Palm Beach County Circuit Court entered judgment against petitioner in that amount. Sometime in 1976, petitioner satisfied this judgment by assigning to Reagan a second mortgage worth $24,700.

On their 1976 joint return, petitioners deducted $24,700 as a "Real Estate Bankruptcy Business Bad Debt." In his notice of deficiency, respondent determined a $9,878 deficiency in petitioner's tax, based, inter alia, on a determination that petitioner's $24,700 business bad debt deduction was really a nonbusiness bad debt. In an amended answer, respondent increased the deficiency to $10,392 on the ground that the $24,700 was neither a business nor a nonbusiness bad debt.

## OPINION

The issue for decision is whether petitioner is entitled to deduct the $24,700 paid in satisfaction of the judgment awarded Reagan. Petitioner asserts that he is entitled to a deduction on the ground that the payment represented a business bad debt, a business loss, or a loss in a transaction entered into for profit. Respondent, on the other hand,

---

[4]Petitioner and the Internal Revenue Service settled the company's tax liability for $34,000. Petitioner took no tax deductions for any of the payments he made on the company's tax or other obligations.

[5]Petitioner retained the company's payroll records because he believed he was required to by law.

contends that petitioner is not entitled to a deduction under section 166[6] for a bad debt because the payment did not stem from a bad debt, and that petitioner is not entitled to a business loss under section 166 or a loss under section 165 or 212 on a transaction entered into for profit. We hold for petitioner on the ground that he is entitled to a deduction in the amount of $24,700 under section 162(a).[7]

Section 162(a) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. We must determine whether an amount paid in settlement of a civil judgment based on fraud may ever be an ordinary and necessary expense of a trade or business. In a recent decision, this Court stated:

> Generally, payments in settlement of a suit arising from allegedly fraudulent activities are deductible as ordinary and necessary business expenses where the activities giving rise to the suit were ordinary business activities. See *James E. Caldwell & Co. v. Commissioner*, 234 F.2d 660 (6th Cir. 1956), revg. 24 T.C. 597 (1955); *Helvering v. Hampton*, 79 F.2d 358 (9th Cir. 1935). [*Bradford v. Commissioner*, 70 T.C. 584, 590 (1978).]

In *Helvering v. Hampton*, 79 F.2d 358 (9th Cir. 1935),[8] affg. a Memorandum Opinion of the Board of Tax Appeals, the taxpayer made a payment in settlement of a judgment based in part on his fraudulent activities in connection with his business of buying, selling, and leasing real properties. The Ninth Circuit held that the taxpayer was entitled to an ordinary and necessary business expense because the fraudulent activities arose out of the taxpayer's business activities. Relying in part on language from Solicitor's Memorandum 4078, V–1 C.B. 226 (1926), declared obsolete in Rev. Rul. 69–31, 1969–1 C.B. 307, the Ninth Circuit distinguished civil fraud damages from fines or penalties imposed under State or

---

[6]All section references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

[7]Although neither party raises sec. 162(a), we do not feel bound to limit our decision-making process to the sections specifically raised by the parties. This is particularly true where petitioner is pro se and respondent's memorandum brief indicates that there is a possibility of an employee deduction argument. Accordingly, we never reach the sec. 165 and sec. 166 arguments.

[8]*Helvering v. Hampton*, 79 F.2d 358 (9th Cir. 1935), affg. a Memorandum Opinion of the Board of Tax Appeals, was cited with approval in *Commissioner v. Heininger*, 320 U.S. 467, 472 n. 6 (1943), where the Supreme Court held that expenses of unsuccessfully litigating a suit to set aside a fraud order of the Post Office were ordinary and necessary.

Federal law. The court reasoned that civil damages arise from the ordinary and necessary operation of a business, while expenses in connection with criminal actions do not. Accordingly, the taxpayer was allowed a deduction.

In *James E. Caldwell & Co. v. Commissioner*, 234 F.2d 660 (6th Cir. 1956), revg. 24 T.C. 597 (1955), the Sixth Circuit, in reversing the majority opinion of this Court and adopting Judge Bruce's dissenting opinion, held that an amount paid in settlement of a judgment rendered against the corporate taxpayer for fraud was deductible as an ordinary and necessary business expense. Judge Bruce reasoned that the taxpayer was in the business of making investments of the type from which the fraudulent activity arose, and thus, the payment was an ordinary expense. Furthermore, the payment was necessary to avoid execution of levy against the taxpayer's property.

Finally, in Rev. Rul. 80-211, 1980-2 C.B. 57, the Internal Revenue Service basically adopted the holdings in *Helvering v. Hampton, supra,* and *James E. Caldwell & Co. v. Commissioner, supra.* There, the taxpayer was sued for fraudulent acts and contractual violations perpetrated in the ordinary conduct of its business. A judgment rendered against the taxpayer included an amount for punitive damages. The Service held that the amounts paid by the taxpayer as punitive damages were deductible as ordinary and necessary business expenses under section 162(a).[9]

Thus, payment of an amount in settlement of a judgment based upon a taxpayer's fraud arising from the ordinary conduct of the taxpayer's business may be deductible as an

---

[9]The Service based its conclusion in part on the legislative history behind sec. 902, Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487, 710 (1969), which added subsecs. 162(f) and (g), and amended subsec. 162(c). These provisions deny deductions for (1) fines and similar penalties paid to a Government for the violation of any law, (2) a portion of the treble damages paid under the antitrust laws, and (3) bribes or illegal kickbacks. In explaining these changes, the Senate Finance Committee stated:

"The provision [section 902 of the act] for the denial of the deduction for payments in these situations which are deemed to violate public policy is intended to be all inclusive. Public policy, in other circumstances, generally is not sufficiently clearly defined to justify the disallowance of deductions. * * * "

S. Rept. 91-552 (1969), 1969-3 C.B. 423, 597. See a discussion of this language in *Alex v. Commissioner,* 70 T.C. 322, 327 (1978) (Wilbur, J., concurring).

ordinary and necessary business expense. See *Spitz v. United States*, 432 F. Supp. 148 (E.D. Wis. 1977).

We now must decide whether petitioner's payment of $24,700 in settlement of the judgment based on his fraudulent misrepresentations arose in the ordinary course of his trade or business. It is well established that, for purposes of section 162, a taxpayer may be in the trade or business of being an employee such as a corporate president or general manager. *Primuth v. Commissioner*, 54 T.C. 374, 376 (1970). Petitioner was in the trade or business of being the president and general manager of Pan American Plumbing, Inc. (the company).[10]

Moreover, petitioner's payment was an ordinary and necessary expense. In *United States v. Gilmore*, 372 U.S. 39 (1963), the Supreme Court ruled that the origin and character of the claim with respect to which an expense was incurred control whether the expense was a business expense. Reagan's claim against petitioner arose directly from petitioner's misrepresentations of the company's financial status made while petitioner was performing his duties as president and general manager of the company. We find that the payment to Reagan is an ordinary and necessary expense of petitioner's business of being an employee. The fact that petitioner made the payment 3 years after the company ceased operations does not bar petitioner's deduction. *Dowd v. Commissioner*, 68 T.C. 294, 301–302 (1977). The expense relates directly to his activities as an employee, and petitioner, a cash basis taxpayer, is only entitled to a deduction in the year payment is made (sec. 1.461–1(a)(1), Income Tax Regs.), regardless of the fact that in that year he no longer acted as an employee of the company.

*Decision will be entered under Rule 155.*

---

[10]Respondent claims that petitioner's trade or business was that of being a plumber and that the payment did not arise out of that business. Although petitioner was a plumber while employed by the company, he was also its president and general manager. The payment arose out of misrepresentations made by petitioner in his capacity as president and general manager of the company.