HORACE E. BROWN AND ELAINE V. BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 8436-84.
United States Tax Court
T.C. Memo 1988-342; 1988 Tax Ct. Memo LEXIS 369; 55 T.C.M. (CCH) 1446; T.C.M. (RIA) 88342; August 1, 1988. James M. Secrest and Richard M. Hall, for the petitioners. Reid Huey, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: This case was assigned to Special Trial Judge Daniel J. Dinan pursuant to the provisions of section 7443A(b) and Rules 180, 181 and 182. [1] The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE DINAN, Special Trial Judge: On January 31, 1984, respondent determined deficiencies in petitioners' Federal Income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Section 6653(a)(1)
Section 6653(a)(2)
1980
$ 2,606.00
$ 130.30
- 0 -
1981
3,068.00  153.40  *
1982
5,448.22  - 0 -
- 0 -
*371 Petitioners timely filed their petition with this Court on April 2, 1984. Respondent filed his answer on May 16, 1984. On August 21, 1985, respondent moved for leave of Court to file an amended answer. The motion was granted and the amended answer was filed on September 30, 1985. Respondent, in his amended answer, asserted that petitioners earned income in 1980, 1981, and 1982 which they did not report on their returns and, as a result, were liable for additional deficiencies and additions to tax in the following amounts: Additions to Tax
Year
Deficiency
Section 6653(b)(1)
Section 6653(b)(2)
1980
$ 9,736.40
$ 6,171.20
- 0 -
1981
9,998.18  6,533.09  - 0 -
1982
10,408.47 7,928.35  **
Respondent contends that the increased deficiencies result from unreported income of $ 20,000 a year for the years 1980-1982, plus unreported gains of $ 2,310 and $ 520, realized in the years 1980 and 1982, respectively, from the sale of farm machinery. This case was called from the Motions Session *372 of the Court as Washington, D.C., on April 22, 1987, for hearing on the Court's Order to show cause why respondent's motions for sanctions, filed March 26, 1987, should not be granted. Counsel for the parties appeared and were heard. By Order dated April 22, 1987, the Court ruled: that the Court's order to show cause is made absolute and respondent's Motion to Impose Sanctions filed on March 26, 1987, is granted in that petitioners shall be prohibited from introducing into evidence at the trial of this case any matters which pertain to paragraphs 3, 4, 5 and 9 under the category "Issues for Trial" set forth in respondent's Trial Memorandum. All issues raised by petitioners in their petition have either been conceded by them or will be decided against them pursuant to the Court's Order of April 22, 1987, supra, imposing sanctions, except whether petitioners failed to report interest income in the amount of $ 636.00 on their return for the year 1980 and whether petitioners are liable for additions to tax under section 6653(a). The parties have stipulated that petitioners omitted from income $ 241.44 in interest on their 1980 return, rather than $ 636.00. The issues raised *373 by respondent in his amended answer filed September 30, 1985, remaining for decision are (1) whether petitioners received unreported income of $ 20,000 in each of the years 1980, 1981 and 1982, (2) whether petitioners are liable for self-employment tax under section 1401 on income received from Brown's Service in the years 1980-1982, (3) whether petitioners realized gain from the sale of farm machinery in the years 1980 and 1982, and (4) whether petitioners are liable for additions to tax under section 6653(b), as an alternative, to the issue of whether they are liable for additions to tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in Franklin, Indiana, at the time they filed their petition. Petitioners have three children: Steven Ray Brown, Jeffrey Lee Brown and Tamara Ann Brown. They filed joint Federal individual income tax returns for the years 1980, 1981 and 1982. Petitioner, Horace Brown (Mr. Brown), who was in his late forties at the time, retired from his civil service job in 1978 because of physical disabilities. He had been a mechanic and later a supervisor at his civil service job. After *374 his retirement, Mr. Brown received disability payments. His disabilities precluded him from engaging in strenuous physical activities. Petitioners' returns in 1980, 1981 and 1982 were prepared by a local tax preparer, Ralph Davis. petitioners had used Davis' service for many years prior to 1980. Davis' method of preparing petitioners' returns was to go down the line items on a blank tax form and ask petitioners for information relevant to each line on the form. After Davis had received all the information from petitioners, he would complete the returns. Davis had used this method of preparing petitioners' returns since 1963. Petitioners never informed Davis that they had received any income from a business known as Brown's Service when they met with him to prepare their tax returns. Petitioners used a trade name known as Brown's Service during the years 1980, 1981 and 1982. Brown's Service was not incorporated. Petitioners had used the name Brown's Service for 20 to 30 years to buy various machine parts wholesale and to publicize their family's jack-of-all trades business activities. These activities included snow removal, lawn care, storage, maintenance and repair work. *375 Receipts stamped with the name Brown's Service were given to customers who had work done by Mr. Brown or his sons. Many of these receipts were marked "paid" or "pd" and were often signed with either Mr. Brown's name or initials or Jeffrey Brown's name or initials. In addition, many of the checks which were made in payment for services rendered (mainly snow removal or lawncare) were made payable to Brown's Service. There is no doubt that substantial funds were paid to Brown's Service for snow removal and lawn care during the years in issue as shown by the receipts and cancelled checks introduced into evidence at trial. Brown's Service employed, in addition to petitioners' sons, numerous other persons who performed labor during the years in issue. [2]
Petitioners allowed their 15-acre farm to be used as a storage facility. People would pay either petitioners, Brown's Service or Jeffrey Brown rent to store property on the farm. Mr. Brown testified that he received approximately $ 600 in rent from people who stored property on his farm during 1982 and *376 1983. [3]
Mr. Brown kept a record book in 1981 of snow removal jobs performed by Brown's Service. The record book contains names of customers and has either an "H" for Horace, "J" for Jeffrey or a checkmark next to the customers' names. Mr. Brown owned a snow removal truck as did his son Jeffrey. However, petitioners' son Steven did not have a truck and so he would borrow Mr. Brown's truck whenever he removed snow. Jeffrey often had help from his friends when removing snow. His friends would also occasionally use Mr. Brown's truck when assisting Jeffrey. Mr. Brown was paid no rent for the use of his truck but was generally reimbursed for out-of-pocket expenses incurred when his truck was borrowed. Jeffrey had numerous snow removal and lawn care customers who had used his services for many years. Mr. Brown assisted Jeffrey in soliciting customers but Jeffrey also solicited many of his customers himself. Mr. Brown often helped Jeffrey by collecting payments *377 for jobs done. He even cashed some of Jeffrey's checks for him. These checks were made out to either Jeffrey, Mr. Brown or Brown's Service. Jeffrey did not have a checking account, but he did have a savings account and a cash equivalency fund account. During the years in question, Jeffrey held part-time jobs in addition to his work doing lawn maintenance and snow removal. He was also a student during this time. Because of his other commitments, he often did not have the time to collect payments for jobs himself. There is no evidence in this record which shows that any of these payments were for services performed by Mr. Brown, instead of Jeffrey. Furthermore, there is no evidence in the record that Mr. Brown performed any of the services associated with Brown's Service during the years in question. Jeffrey's tax returns for the years 1980, 1981 and 1982 did not report as income amounts he received from his work doing lawn maintenance and snow removal. However, in 1984 he submitted unsigned Forms 1040 marked "amended Federal income tax returns" (for the years 1980, 1981 and 1982, respectively) which included income from those sources. These Forms 1040 were submitted after *378 petitioners had been audited by respondent's agents. Mr. Brown, under the name of Brown's Service, was in the business of selling Swirlsoft water softeners. He sold the water softeners at wholesale cost to friends and to his church, but not to the general public. Mr. Brown was involved in three automobile accidents between 1980 and 1982. After his first accident he filed a claim with his own insurance company, Preferred Risk. A part of his claim was for lost wages. After initially resisting the insurance company's request for copies of his Federal income tax returns, Mr. Brown furnished copies of his income tax returns for the years 1978, 1979 and 1980 to the insurance company. He claimed that he had additional income from self-employment activities which he had not reported on his tax return. Petitioner settled his claim with Preferred Risk for $ 4,575. Mr. Brown was involved in a second automobile accident which occurred in June, 1981. he filed a third-party claim with the other driver's insurance company, Allstate Insurance. He claimed personal injuries and lost wages. The insurance company asked for copies of petitioners' income tax returns to verify lost wages claimed. *379 They refused. Mr. Brown again claimed he had self-employment income which he had not reported on his return. The insurance company settled with him for $ 27,000. In February of 1982, Mr. Brown was involved in a third automobile accident. Again he claimed lost wages including income he did not report on his tax return. The insurance company, Indiana Insurance, denied his claim. In 1984, Mr. Brown was indicted by the State of Indiana, County of Marion, on three counts relating to insurance fraud. The first count charged him with exerting unauthorized control over the property of Preferred Risk by falsely claiming the existence and extent of physical injuries, lost wages and income. The second count was similar to the first except that it concerned his claim against Allstate Insurance Company. The third and final count concerned the attempted theft of property from Indiana Insurance Company by submitting false income loss claims. Mr. Brown, in a plea arrangement, pled guilty to Count III. Counts I and II were dismissed accordingly. A judgment of guilty of attempted theft was entered against him for submitting false income claims to the Indiana Insurance Company. [4]
*380 Mr. Brown testified on the stand in this case that he had lied about lost income on his insurance claims. On February 2, 1980, Mr. Brown sold a wheat drill, cultivator, rotary hoe and posthole digger for $ 1,050. On February 5, 1980, he sold a disk and plow for $ 1,000. On August 7, 1980, he sold two wagons for $ 260. On April 27, 1982, he sold a grader blade for $ 520. Petitioners have conceded that they have no remaining basis in the two wagons which were sold on August 7, 1980. Petitioners' 1980 return contained a depreciation schedule which did list property which may have been the same as the other property sold. The property listed on the schedule did have basis remaining. Respondent offered no evidence as to the basis of the farm equipment sold. Petitioners' 1980, 1981 and 1982 tax returns were audited by respondent. Respondent's auditors held several meetings with petitioners during 1983. The auditors examined petitioners' items of income and asked if there were any additional unreported items of income. petitioners said that they reported all of their income. Respondent's auditors requested records of petitioners' activities. Petitioners produced all the *381 records requested of them except for their cancelled checks. The auditors requested the cancelled checks on July 21, 1983. However, petitioners' cancelled checks previously had been seized by the Marion County prosecutor's office for the insurance fraud investigation. The record discloses no other evidence of non-cooperation on the part of petitioners during the examination of their returns by respondent's auditors. OPINION As a preliminary matter, we would note that all issues raised by petitioners' in their petition except the additions to tax under section 6653(a) were resolved before trial. The other issues remaining for decision were first raised in respondent's amended answer. Under Rule 142(a), respondent has the burden of proof on all issues raised in the amended answer. See Reiff v. Commissioner,77 T.C. 1169, 1173 (1981). Respondent first contends that petitioners actively carried on a business known as Brown's Service which generated substantial income not reported on their 1980, 1981 and 1982 returns. There is no doubt that substantial revenues were *382 generated by Brown's Service. This is evidenced by the fact that receipts stamped with the name Brown's Service were given to customers for services rendered and that customers often wrote checks out to Brown's Service to pay for services rendered. The existence of Brown's Service is also evidenced by the fact that Mr. Brown used that name to purchase Swirlsoft water softeners, wholesale. Further evidencing the existence of Brown's Service is the fact that various individuals submitted signed statements that they received funds from Brown's Service for services they performed for it as employees. Based on this evidence, we find that Brown's Service existed during the years in issue and was in the business of providing such services as lawn care, snow removal, general maintenance, etc. We are not, however, persuaded that Mr. Brown personally received any income from these activities of Brown's Service. Respondent has offered evidence which purports to show that Mr. Brown personally received income from Brown's Service during the years in issue. His evidence includes cancelled checks, signed receipts, log books and Mr. Brown's representations to certain insurance companies. Mr. *383 Brown countered that he did none of the work which produced the income attributable to Brown's Service and only collected money for his sons who did not have the time to collect the bills themselves. Indeed, he testified that because of his disabilities, he could not engage in physical labor. His testimony was corroborated by Jeffrey. Mr. Brown owned a snow plow but claimed that he did not use it because of his disabilities. He claims that when his truck was used, it was used by one of Jeffrey's friends. Respondent has offered no evidence to show that Mr. Brown actually removed snow and was paid for his services. A log book was received in evidence at trial which lists the amount charged for snow removal jobs in 1981 and which shows either Mr. Brown's initial or Jeffrey's initial or a checkmark beside it. Mr. Brown testified that the initial simply indicated whose truck was used. Respondent argues that the initial indicates who performed the services. We find that there is insufficient evidence in the record to prove that Mr. Brown did any of those jobs. We are unwilling to draw the inference, as suggested by respondent, that Mr. Brown's initial in the log book shows that *384 he personally performed the work charged for as shown in the log book. As for the signed receipts, again respondent argues that this demonstrates that Mr. Brown, not his son Jeffrey, performed those services. Mr. Brown testified that he was simply collecting the payments for his son who was busy at his other job or in school. Again, respondent's argument is unpersuasive. The mere collection of funds by Mr. Brown is insufficient to prove that he performed those services. Fink v. Commissioner,T.C. Memo. 1984-505; Stoll v. Commissioner, a Memorandum Opinion of this Court dated Aug. 19, 1946. There was also introduced into evidence at trial a book which lists names of people who stored property on petitioners' 15-acre farm. This storage revenue is also evidenced by cancelled checks of the people who paid to have their property stored and the records kept by petitioners. Respondent argues that the amount evidenced by the receipts of these rental payments is income to petitioners. Jeffrey testified that he was the person who received most of the money, not petitioners. Petitioners further argue that their costs were not taken into account in determining *385 whether there was income attributable to petitioners. Nevertheless, the log book, cancelled checks and the admission by Mr. Brown that he received approximately $ 600 in rent from storages persuades us that he received this income in 1982. Therefore, respondent has met his burden of proof on this issue. Generally speaking, income from rental property is taxed to the owner of property even if someone else managed the property. Palmieri v. Commissioner,27 T.C. 720, 721 (1957). Consequently, even though Jeffrey may have collected the money, it is still taxable to petitioners. Respondent places a great deal of weight on the fact that Mr. Brown represented to three insurance companies that he had self-employment income from Brown's Service which he did not report on his income tax returns. Respondent had representatives of the insurance companies involved testify at trial that he told them that he made money from various odd jobs which he did not report on his returns. We do not doubt that these conversations took place. We have no doubt, however, that Mr. Brown was completely *386 untruthful in his claims against the insurance companies for lost income. Clearly, he had ulterior motives in preparing his insurance claims; namely that his overstatements of income would result in a larger dollar settlement with the insurance companies. Indeed, his untruthful representations cost him dearly because he was convicted of submitting false income claims to the Indiana Insurance Company, a felony offense in Indiana. We attach little weight, therefore, to his representations of lost income to the insurance companies because we find his representations to have been deceitful. Respondent further asserts that Mr. Brown received unreported income from the sale of Swirlsoft water softeners. He admits that he sold water softeners to friends and to his church but not to the general public. [5] He claims to have bought the water softeners wholesale and to have resold them at the same price. In fact, he claims to have lost money on the sales when his costs are taken into account. Respondent offered no evidence to show otherwise. Accordingly, we find that respondent has failed to prove that Mr. Brown realized any gain from the sale of the Swirlsoft water softeners. *387 Initially, the revenues from Brown's Service were not reported as income by anyone. However, Jeffrey Brown, in 1984, filed for 1980, 1981 and 1982 Forms 1040 marked amended tax returns adding to gross income amounts he received from his snow removal and lawn care business. We find it curious that his amended unsigned returns had been prepared without his knowledge, shortly after his parents were audited by respondent's agents. Numerous inferences can be drawn from this; the most obvious is that since respondent's agents had discovered Brown's Service they would eventually trace income generated by it to Jeffrey Brown. But we could very well infer that petitioners were trying to hide unreported income by representing that their son earned the money and reported it as his income when, in fact, it was petitioners who earned the money. Nonetheless, there is insufficient evidence in the record to persuade us that Jeffrey Brown's unsigned Forms 1040 were used to cover up any unreported income of petitioners. Respondent further contends that petitioners' unreported income enhanced their lifestyle. The record discloses that petitioners received income from dividends and interest, capital *388 gains from the sale of their farm and income from retirement pay. The record fails to disclose evidence which would show that petitioners' standard of living was above one which could be supported by petitioners' reported income. Therefore, we are unpersuaded by respondent's enhanced lifestyle argument because it is reasonable to assume that petitioners' lifestyle could be supported without the income from Brown's Service. Respondent has offered into evidence voluminous records, testimony from witnesses and various financial statements of petitioners in an effort to prove that petitioners received unreported income from Brown's Service. As we have said, supra, we find that Brown's Service existed and that it generated revenues. Respondent, however, has failed to persuade us that petitioners earned the income generated by Brown's Service. Therefore, we find that respondent has failed to meet his burden of proof to show that petitioners received unreported income from Brown's Service other than the income from the storage of property on petitioners' property. Respondent has also raised the issue of whether petitioners received unreported income from the sale of farm machinery. *389 Petitioners concede that they failed to report taxable gain of $ 260 from the sale of two wagons having a basis of zero. Respondent contends that petitioners had unreported gains of $ 520 from the sale of a grader blade, $ 1,000 from the sale of a disk and plow and $ 1,050 from the sale of a wheat drill, cultivator, rotary hoe and posthole digger. Petitioners contend that the basis of the equipment exceeded its sale price so that no gain should be recognized. Respondent did not offer any evidence on the basis of the equipment but argues that the basis was zero. We have no proof in this record to persuade us that the basis in the equipment sold is zero or is less then the amount realized. This is especially true considering the fact that petitioners' depreciation schedules list property which may in fact have been the property sold which property showed unrecovered basis. Again the respondent has failed to persuade us that petitioners realized taxable income, other than from the sale of the two wagons. See Falck v. Commissioner,26 B.T.A. 1359, 1365 (1932), affd. sub nom. Houghton v. Commissioner,71 F.2d 656 (2d Dir. 1934) (the Internal *390 Revenue Service had the burden of proof on the issue of basis because the Commissioner raised it in his amended answer; failure to prove basis caused the Board to conclude no gain was realized); James E. Caldwell Co. v. Commissioner,24 T.C. 597, 622 (1955) (dissenting opinion), revd. 234 F.2d 660 (6th Cir. 1956) (upheld dissenting opinion) (when basis not shown, one will not be presumed). We will not assume the basis of the property and since respondent has failed to introduce any evidence regarding basis we find that respondent has failed to prove that there was a taxable gain from the sale of the equipment, other than the $ 260 gain from the sale of the wagons. Respondent has alleged that petitioners are liable for the self-employment tax under section 1401 for income they received from Brown's Service. As we have previously found, respondent has only proved that petitioners failed to include in income gain from the sale of two wagons and rental income from storage on their 15-acre farm. This income is not subject to the self-employment tax. Section *391 1401 places an additional tax on self-employment income. Self-employment income is defined as net earnings from self-employment. Section 1402(b). Net earnings from self-employment do not include rentals from real estate, section 1402(a)(1), or gain or loss from the sale of property, section 1402(a)(3). Therefore, since the unreported income which we have found is not self-employment income, the tax on self-employment income under section 1401 is not applicable and may not be assessed. Respondent asks us to find that petitioners' underpayment was due to fraud under section 6653(b). We have already found that respondent has failed to meet his burden of proof with respect to the receipt of additional income by petitioner, except for the gain of $ 260 from the sale of two wagons and the receipt of $ 600 in rental income. Therefore, our fraud inquiry is restricted to those two items of unreported income. Respondent must prove that any portion of an underpayment in tax was due to fraud by clear and convincing evidence. Section 7454(a); Rule 142(b); Stone v. Commissioner,56 T.C. 213, 220 (1971). *392 This burden may be met by showing that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes, and that there is an underpayment of tax. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Stephenson v. Commissioner,79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. without opinion 578 F.2d 1383 (8th Cir. 1978). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Spies v. United States,317 U.S. 492 (1943); Gajewski v. Commissioner, supra at 200; Stone v. Commissioner, supra at 223-224. Circumstantial evidence of fraud may be shown by substantial underreporting *393 of taxable income, Alder v. Commissioner,422 F.2d 63, 66 (6th Cir. 1970), affg. T.C. Memo. 1968-120; Vise v. Commissioner,31 T.C. 220, 226-227 (1958), affd. 278 F.2d 642 (6th Cir. 1960); dealing in cash, Spies v. United States,317 U.S. 492 (1943), Bowlin v. Commissioner,31 T.C. 188, 203 (1958), affd. per curiam 273 F.2d 610 (6th Cir. 1960); and failing to maintain adequate books and records. Spies v. United States, supra;Bryan v. Commissioner,209 F.2d 822, 827 (5th Cir. 1954), cert. denied 348 U.S. 912 (1955), affg. T.C. Memo. 1951-313; Romer v. Commissioner,28 T.C. 1228 (1957). The record in this case falls far short of proving by clear and convincing evidence that petitioners understated their taxable income with the intent to evade tax. Respondent argued that petitioners substantially underreported their income. If true, this would be evidence of fraud. However, such is not the case. Petitioners merely omitted from income the proceeds from the sale of two wagons and a small amount *394 of rental income. This amount is insignificant when compared to the income petitioners reported during the years in issue. Respondent also argues that petitioners dealt in cash to conceal income. The record does not support respondent's argument. Since we have determined that most of the income earned through Brown's Service is not attributable to petitioners, it follows that petitioners' receipts of cash were a very insignificant portion of their total income. Respondent also argues that petitioners were evasive during their audit. We disagree. Petitioners appear to have been forthright when being audited by respondent's agent. In fact, respondent's agent admitted that the only documents which petitioners did not turn over during the audit were the cancelled checks which were not in petitioners' possession. Admittedly, petitioners' business records were disorganized and incomplete. This fact is probative on the question of fraudulent intent. However, petitioners' failure to keep adequate business records is not so egregious as to rise to the level of fraudulent intent. Respondent has failed to produce clear and convincing evidence of fraudulent intent to evade taxes during *395 the years in issue. Accordingly, we hold that respondent is not entitled to additions to tax for fraud under section 6653(b). Respondent argues that if he has not established the addition to tax for fraud, that the underpayments in taxes for the years in issue were due to negligence or intentional disregard of the rules and regulations. Sections 6653(a)(1) and 6653(a)(2). A review of this record convinces us that petitioners failed to maintain adequate records to show their income tax liabilities for the years in issue. They are clearly liable for additions to tax for the years in issue pursuant to sections 6653(a)(1) for each of the years 1980 and 1981 on the amount of the deficiencies under our determination and the addition to tax under section 6653(a)(2) for the year 1981. Insofar as this record shows the entire underpayment for 1981 was due to negligence. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1986, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of practice and Procedure. ↩
*. 50 percent of the interest due on the underpayment of $ 1,775.00. ↩
**. 50 percent of the interest due on the underpayment of $ 15,856.69 ↩
2. Persons who rendered services for Brown's Service were: Joe Fletcher, Mark Patterson, Jim Wells, and Gary Wayne Emberton. ↩
3. Mr. Brown testified to this fact and there is also a record book in evidence which shows the names of the renters and the amounts paid. These amounts total approximately $ 600, which appear to have been paid in 1982. ↩
4. Mr. Brown received a one year suspended sentence, was put on probation for six months, was required to serve 50 hours of community service, and was required to pay a $ 75 probation fee and a $ 15 a month supervision fee. ↩
5. Mr. Brown stipulated to the fact that he was in the business of selling Swirlsoft water softeners. ↩