T.C. Memo. 1997-19

UNITED STATES TAX COURT

P. DAVID MUSGRAVE AND BARBARA J. MUSGRAVE, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20374-94.                    Filed January 9, 1997.

Martin J. Horwitz, for petitioners.

Nancy Ortmeyer Kuhn and Matthew J. Fritz, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, Judge: Respondent determined a deficiency of $20,343 in petitioners' 1990 Federal income tax, an addition to tax pursuant to section 6651(a)(1) of $936, and an accuracy-related penalty pursuant to section 6662 of $4,069.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and

all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues to be decided are as follows:

1.  Whether petitioners are entitled to deduct a loss carryforward attributable to the deduction by petitioner P. David Musgrave's wholly owned S Corporation on its 1988 tax return of an amount it paid during 1988 to settle a lawsuit;

2.  whether the S Corporation is entitled to a deduction it claimed on its 1990 return for attorney's fees paid during 1990; and

3.  whether petitioners are liable for an addition to tax and penalty pursuant to sections 6651 and 6662 for taxable year 1990.

## FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91.  The parties' stipulations of fact are incorporated herein by reference and are found as facts in the instant case.

At the time they filed their petition in the instant case, P. David Musgrave and Barbara J. Musgrave (petitioners) resided in Kettering, Ohio.

Petitioner P. David Musgrave (petitioner) was, at all relevant times, the sole shareholder of an S Corporation known variably, in chronological order, as David Musgrave, CPA, Inc.; Jeffcott & Musgrave CPAs, Inc.; and Musgrave & Associates CPAs, Inc. (S Corporation).

Petitioner received his CPA certificate during 1984. At that time, he began a private accounting practice and incorporated David Musgrave CPA, Inc. (the S Corporation) to carry on the practice. During February 1986, William T. Jeffcott, CPA (now deceased) and petitioner merged their respective accounting practices. Petitioner changed the name of the S Corporation to Jeffcott & Musgrave, CPAs, Inc. Petitioner, however, remained the sole shareholder of the S Corporation.

During September 1986, petitioner and Mr. Jeffcott each completed an application for key man life insurance through a group plan sponsored by the American Institute of Certified Public Accountants and underwritten by Prudential Insurance Company of America (Prudential). Each policy provided for $200,000 life insurance with double indemnity in the event of accidental death. The applications for both petitioner and Mr. Jeffcott stated the insurance beneficiary as "Jeffcott & Musgrave, CPAs, Inc."

Sometime during December 1987, it was discovered that Mr. Jeffcott had embezzled approximately $165,000 from Color Q, Inc. (Color Q), a client of the S Corporation. Mr. Jeffcott, an employee of the S Corporation at the time of the embezzlement, was providing services to Color Q pursuant to an engagement letter between Color Q and the S Corporation and for which the S Corporation was paid fees by Color Q. On December 16, 1987, Mr.

Jeffcott died as a result of injuries sustained in an automobile accident.

On December 21, 1987, Color Q filed a Complaint in the Common Pleas Court of Montgomery County, Ohio (Montgomery County Court), Case Number 87-4055, to recover the money allegedly embezzled by Mr. Jeffcott (embezzlement suit). In its complaint, Color Q named the following defendants: (1) Teresa L. Jeffcott (the wife of William T. Jeffcott), (2) JNANA, Inc. (JNANA), a corporation formed by the Jeffcotts and owned by Teresa L. Jeffcott, (3) petitioner, and (4) the S Corporation. The Estate of William Jeffcott (Estate) was subsequently added as a defendant on May 10, 1988. Color Q sought consequential and incidental losses that were allegedly sustained as a result of Mr. Jeffcott's embezzlement, as well as treble damages, costs of the suit, and attorney's fees pursuant to the Ohio Corrupt Activities Act.

During December 1987, the S Corporation sent to the Estate's administrator an "Affidavit in Statement of Claim" stating that the S Corporation was "the owner of a claim" against the Estate for the amount of $193,500 plus interest from December 16, 1987. The S Corporation stated that the claim was "contingent on the outcome" of the insurance suit (described below); i.e., it was contingent on the S Corporation's being found to be the beneficiary of the proceeds of the Prudential life insurance policy on Mr. Jeffcott's life.

On March 3, 1988, the Estate's administrator filed a Complaint for Declaratory Judgment in the Court of Common Pleas of Warren County, Ohio (Warren County Court), Case No. 3-3-88-102-46883 (insurance suit). In the insurance suit, the Estate sought a judicial determination of the relative rights of the Estate, the S Corporation, and petitioner with regard to the proceeds from the Prudential life insurance policy on Mr. Jeffcott's life (insurance proceeds).

On April 28, 1988, a status conference and hearing were held in the embezzlement suit. During those proceedings, Color Q agreed that in the event that any of the defendants in the embezzlement suit were adjudicated to be rightful beneficiaries of the insurance proceeds as a result of the insurance suit, Color Q would accept the amount of $190,000 in full and final settlement of all claims with respect to all defendants in the embezzlement suit. Additionally, during those proceedings, each of defendants JNANA, Teresa L. Jeffcott, the S Corporation, and petitioner agreed that if the court in the insurance suit found any one of them to be the rightful recipient of the insurance proceeds, that person or entity would make payment of $190,000 to Color Q, which agreed that, upon payment, it would dismiss all claims against all defendants in the embezzlement suit.

On May 11, 1988, in a status conference held in the Probate Court of Warren County regarding the Estate, the Special

Administrator of the Estate allowed Color Q's claim in the amount of $190,000 as a claim against the assets of the Estate.

In July 1988, a Stipulated Entry, reflecting the settlement made in the April 28, 1988, hearing, was signed by all of the parties to the case and entered in the Montgomery County Court. The Stipulated Entry provided that Color Q and defendants JNANA, the Estate, Teresa L. Jeffcott, petitioner, and the S Corporation "in consideration of the mutual relinquishment between plaintiff and each of the defendants of their respective legal rights and defenses" agree as follows:

1.  The Special Administrator of the Estate * * * allows the claim of Color Q as to the assets of the Estate in the amount of $190,000.

2.  Defendant * * * [petitioner] acknowledges and agrees he will make payment to Color Q in the amount of $190,000 in the event the court in the Declaratory Judgment action [the insurance suit] issues its order, judgment or decree that he is entitled to the Insurance Proceeds.

3.  Defendant * * * [S Corporation] acknowledges and agrees it will make payment to Color Q * * * in the amount of $190,000 in the event the court in the Declaratory Judgment action [the insurance suit] issues an order, judgment or decree that it is entitled to the Insurance Proceeds.

4.  The defendant Teresa L. Jeffcott acknowledges the stipulations contained in this Entry to be valid, and agrees that she accepts its terms, both individually and as natural guardian and next of kin for her minor children.

5.  Plaintiff, in consideration of the defendants' covenants and agreements as aforesaid, agrees to dismiss with prejudice its Complaint in Case No. 87-4055 against all defendants upon payment to Color Q * * * in the amount of $190,000.  Plaintiff will bring no further action based upon facts set forth in its Amended Complaint, and will discharge each defendant from claims in the Amended Complaint.

\*　　\*　　\*　　\*　　\*　　\*　　\*

7.　　It is understood that this resolution is intended to cover all future claims which may develop between plaintiff and JNANA, Inc., the Estate \* \* \*, Teresa L. Jeffcott, \* \* \* [petitioner], \* \* \* [the S Corporation].  Each defendant hereby releases Color Q from possible claims, demands or causes of action which he, she or it may have or claim to have against Color Q \* \* \*.

8.　　In the event none of the defendants is deemed entitled to the Insurance Proceeds or, in the event Color Q \* \* \* has not been paid $190,000 on or before October 15, 1988, then Color Q \* \* \* will reserve the right to declare this Stipulated Entry null and of no effect, and to proceed with all claims which it has, or may have filed, against defendants on the date this Entry is filed with the Court.

Subsequently, Prudential paid the insurance proceeds in the amount of $400,000 (twice the face amount because of the policy's accidental death benefit) plus interest to the Clerk of the Warren County Court and was discharged as a party to the insurance suit.  On October 29, 1988, the Warren County Court issued a "Journal Entry Ordering Deposit in Interest Bearing Account, and Related Matters" in the insurance suit, ordering that the Clerk of the Warren County Court remit the sum deposited by Prudential "jointly to both attorneys, to Mark Bogan [sic], Administrator of the Estate of William T. Jeffcott, Deceased and to Carl Anthony Cramer, Attorney for Defendants P. David Musgrave and Jeffcott & Musgrave, CPA's, Inc.".  The Warren County Court further ordered that "said attorneys deposit said sum in one or more joint interest bearing accounts in both of their names as fiduciaries for their respective clients".  On October 31, 1988, the Clerk of the Warren County Court issued a check in the amount

of $416,632 to "Mark Bogen, Attorney and Carl Anthony Cramer, Attorney".  The check was deposited into a Fifth Third Bank account in the name of the attorneys as fiduciaries with the endorsement "Mark R. Bogen" and "Carl Anthony Cramer trustee 11/16/88 deposit in trust only".

Sufficient proceeds to pay Color Q were moved from the Fifth Third Bank account in the name of the fiduciaries to the S Corporation's account.  On November 16, 1988, a check in the amount of $193,500 drawn on an account held in the name of the S Corporation was issued to Color Q et al.  The check bore the notation:  "In full settlement of any and all claims per Montgomery County Common Pleas Court Case #87-4055."  In issuing such check, the S Corporation paid to Color Q and Color Q's attorneys $193,500 in satisfaction of the Color Q claim.

On June 22, 1990, the Warren County Court, deciding that the S Corporation was the beneficiary of the Prudential life insurance policy, awarded to the S Corporation the remaining proceeds from the policy; i.e., the difference between (1) $400,000 plus accrued interest and (2) $193,500.  By Memorandum Decision and Judgment Entry, dated December 23, 1991, the Court of Appeals, Twelfth Appellate District of Ohio, Warren County, affirmed the judgment of the Warren County Court that the S Corporation was the legal beneficiary of the insurance proceeds.

From the day after Mr. Jeffcott's death in December 1986 until the resolution of the embezzlement suit in 1990,

petitioners were assisted by two attorneys: Carl Anthony Cramer and Timothy Tye, of the law firm Tye and Tye. In representing petitioners, Mr. Cramer and Mr. Tye worked as a team but out of different offices. The attorneys rendered services in defense of both the embezzlement suit and the insurance suit.

On its 1988 return, the S Corporation deducted the Color Q payment as a "Client Reimbursement" and reported a loss of $117,602 for the year. Petitioners reported the loss on their 1988 return as petitioner's distributive share of the S Corporation's loss, resulting in a net operating loss on petitioners' 1988 return. On their 1990 return, petitioners deducted a net operating loss carryforward of $58,020, the amount remaining from their 1988 net operating loss. In the notice of deficiency, respondent denied petitioners' net operating carryforward for taxable year 1990, thereby increasing petitioners' taxable income in the amount of $58,020. Consequently, only the $58,020 carryforward amount is in issue.

On its 1990 return, the S Corporation deducted legal fees in the amount of $34,226 and reported $58,890 of income for the year. Petitioners reported the $58,890 amount on their 1990 return as their distributive share of ordinary income from the S Corporation. In the notice of deficiency, respondent denied the S Corporation's deduction of legal fees, thereby increasing the S Corporation's ordinary income for taxable year 1990 by $34,226. Accordingly, respondent increased petitioner's ordinary income

for taxable year 1990 by $34,226, petitioner's distributive share of the S Corporation's ordinary income.

OPINION

The first issue to be decided is whether petitioner's wholly owned S Corporation was entitled to deduct on its 1988 tax return the payment of $193,500 that it made to Color Q during 1988 in settlement of Color Q's embezzlement suit against the S Corporation (the Color Q payment).[1]  Petitioners contend that the S Corporation was entitled to deduct the Color Q payment on its 1988 return as an ordinary and necessary business expense pursuant to section 162.  Respondent contends that, because the S Corporation never included Mr. Jeffcott's embezzlement proceeds in its income, the S Corporation is not entitled to a deduction. Respondent relies on a line of cases holding that no deduction may be taken for an expense that is associated with an income item unless that income has been reported in the taxpayer's gross income for the current year or some previous year.  See, e.g., United States v. Skelly Oil Co., 394 U.S. 678 (1969).

---

[1]    The deduction of the Color Q payment resulted in a loss reported by the S Corporation for 1988.  Petitioners reported the loss on their 1988 return as petitioner's distributive share of the S Corporation's loss.  As a result of their deduction of that loss, petitioners reported on their 1988 return a net operating loss which subsequently was carried forward to petitioners' 1990 return.  It is the disallowance of the loss carryforward on petitioners' 1990 tax return that requires an inquiry into the S Corporation's 1988 tax return and the deductibility of the Color Q payment by the S Corporation.

In the instant case, Mr. Jeffcott, an employee of the S Corporation, embezzled approximately $165,000 from Color Q, a client of the S Corporation. At the time of the embezzlement, Mr. Jeffcott was an employee of the S Corporation and was providing services to Color Q pursuant to an engagement letter between Color Q and the S Corporation and for which the S Corporation was paid fees by Color Q. During the pendency of the complaint in the embezzlement suit, Color Q discovered no evidence that petitioner had personally participated in Mr. Jeffcott's wrongful course of conduct. Additionally, the record contains no evidence and no party alleges that either petitioner or the S Corporation ultimately received any of the embezzlement proceeds, which we take as a concession that the S Corporation did not receive any of the embezzlement proceeds.

Because the S Corporation neither received nor had any claim of right to any of the embezzlement proceeds, we find respondent's reliance on the Skelly line of cases to be misplaced. As the embezzlement proceeds were appropriated by Mr. Jeffcott and not the S Corporation, such proceeds would not be income to the S Corporation. Consequently, we conclude that the Skelly line of cases is not applicable to the instant case.[2]

Respondent next argues that the Color Q payment was not an "ordinary and necessary" business expense of the S Corporation

[2] Respondent makes no argument that the deduction of the Color Q payment should be disallowed under sec. 265.

within the meaning of section 162(a). To qualify as an allowable deduction pursuant to section 162(a), "an item must (1) be 'paid or incurred during the taxable year,' (2) be for 'carrying on any trade or business,' (3) be an 'expense,' (4) be a 'necessary' expense, and (5) be an 'ordinary' expense." Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971).

Petitioners contend that the Color Q payment was deductible by the S Corporation based on the application of the "origin of the claim" doctrine (see United States v. Gilmore, 372 U.S. 39 (1963)).[3] Citing James E. Caldwell & Co. v. Commissioner, 234 F.2d 660 (6th Cir. 1956), revg. 24 T.C. 597 (1955), and Ostrom v Commissioner, 77 T.C. 608 (1981), petitioners argue that the Color Q payment was an ordinary and necessary expense of the S Corporation because the embezzlement suit arose out of the ordinary business operations of the S Corporation.

Respondent argues that James E. Caldwell & Co. v. Commissioner, supra, stands for the proposition that a judicial determination of liability is required for deductibility pursuant to section 162(a), quoting Judge Bruce's dissent, "It is not the petitioner's culpability but his liability that determines his right to the deduction". James E. Caldwell & Co. v.

---

[3]    The Supreme Court held that "the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was 'business' or 'personal' and hence whether it is deductible or not under § 23(a)(2)." United States v. Gilmore, 372 U.S. 39, 49 (1963).

<u>Commissioner</u>, 24 T.C. 597, 618 (Bruce, J., dissenting), revd. 234 F.2d 660 (6th Cir. 1956) (citing Judge Bruce's dissent with approval). Consequently, respondent argues that, because there has never been a judicial determination that the S Corporation would be ultimately liable for the amount of the embezzlement, the S Corporation is not entitled to deduct the Color Q payment.

We do not agree with respondent. In <u>James E. Caldwell & Co. v. Commissioner</u>, <u>supra</u>, the Sixth Circuit Court of Appeals held, inter alia, that an amount paid in satisfaction of a judgment rendered against the corporate taxpayer for fraud was deductible as an ordinary and necessary business expense. We view the language cited by respondent as support for the taxpayer's entitlement to the deduction under the facts of the <u>James E. Caldwell & Co.</u> case, not a statement of law that a judicial determination of liability is a prerequisite to a deduction. Indeed, we have held to the contrary in <u>Waring Prods. Corp. v. Commissioner</u>, 27 T.C. 921, 929 (1957) and <u>Old Town Corp. v. Commissioner</u>, 37 T.C. 845, 859 (1962). Additionally, we have allowed a deduction pursuant to section 162(a) for a payment in settlement of a claim, even where it has not been ordered by a court. <u>Old Town Corp. v. Commissioner</u>, <u>supra</u>.

As stated above, Mr. Jeffcott, who was an employee of the S Corporation at the time of his embezzlement of funds from Color Q, was providing services to Color Q pursuant to an engagement letter between Color Q and the S Corporation for which the S

Corporation was paid fees by Color Q. The embezzlement suit was brought by Color Q to recover the money allegedly embezzled by Mr. Jeffcott while he was providing services as an S corporation employee to Color Q. Under such circumstances, we conclude that the embezzlement suit arose out of activities of the S Corporation's business.

Respondent next argues that the S Corporation did not "substantively pay" Color Q, and that the S Corporation therefore did not, within the meaning of section 162, "pay" or "incur" an "expense" during 1988 with respect to the settlement of Color Q's claim. Although respondent acknowledges that "the [Color Q] payment was routed through the S Corporation's checking account on November 16, 1988", respondent nonetheless argues that "the amount paid to Color Q was not reduced to the S Corporation's possession, and neither the [Montgomery County Court] nor the other parties intended that it be reduced to the S Corporation's possession."

We think that respondent's focus on the source of the funds used to make the Color Q payment is misplaced. The fact that the parties to the insurance suit agreed that the insurance proceeds would be used to settle the embezzlement suit does not diminish the fact that the S Corporation ultimately issued its own check[4]

_____

[4]    As set forth above in our findings of facts, the record contains a check drawn on the S Corporation's account to Color Q et al. in the amount of $193,500 in full settlement of the

(continued...)

in satisfaction of Color Q's claim.  The S Corporation could have received the funds to cover that check from a number of sources, such as loans, capital contributions, income from operations, or other sources.  The source of those funds is not material.  What is controlling is the fact that the S Corporation made the Color Q payment from its own account.  Accordingly, we find it unnecessary to trace the source of those funds.  Consequently, we conclude that the Color Q payment was an "expense" of the S Corporation that it "paid or incurred" during 1988 within the meaning of section 162(a).

Respondent next argues that Mr. Jeffcott's embezzlement activity was not "ordinary" because embezzlement is not part of the trade or business of being an employee, citing Yerkie v. Commissioner, 67 T.C. 388, 393 (1976).  We think that respondent's argument is misplaced in that it focuses on the wrong party.  In the instant case, the issue is not whether Mr. Jeffcott can deduct the Color Q payment; rather, the issue is whether the S Corporation is entitled to deduct the Color Q payment as an ordinary and necessary expense of its business.

We think that the proper analysis of the instant case can be found in Old Town Corp. v. Commissioner, 37 T.C. at 858-859.  In Old Town Corp., we set forth the standards to decide whether an expense paid to settle a lawsuit is "necessary" within the

_____

4(...continued)
embezzlement suit.

meaning of section 162(a) of the 1954 Code.  We asked the
following questions:  (1) Was the taxpayer entirely confident
that any suit which the plaintiff might bring could not succeed?
(2) did the taxpayer make the payment in question only for the
purpose of avoiding the damage to the taxpayer's credit,
reputation, and business generally which might result from such a
suit? and (3) was any such fear which the taxpayer may have had,
so far justified that a reasonable person in the taxpayer's place
would have thought a settlement at that figure less than the
damage which would follow from such a suit?  Id.

The record establishes that the S Corporation made the Color
Q payment as a result of Mr. Jeffcott's actions performed while
he was an S Corporation employee and pursuant to an engagement
letter between Color Q and the S Corporation for which Color Q
paid fees to the S Corporation.  The S Corporation was named as a
defendant in Color Q's embezzlement suit and was potentially
liable for the damages from the suit, treble damages under the
Ohio Corrupt Activities Act, the costs of the suit, and the
attorney's fees.

Applying the standards of Old Town Corp., we are satisfied
that it was reasonable to conclude that Color Q's claim might
succeed.  The record shows that petitioner viewed Color Q's claim
seriously and that he sought the advice of his counsel, who
advised him to settle the claim.  We are also satisfied that the
S Corporation made the payment in question to avoid damage to its

credit, reputation, and business generally which might result from such a suit. Petitioner testified that he was new in the practice, that he thought he was going to lose clients because of the publicity, and that he would be held to a higher standard because he was in a position of integrity and trust. Petitioner also testified that the potential risk from the suit was treble damages and that "It wasn't worth it."

We also think that a reasonable person, standing in the place of petitioner or the S Corporation, would have thought that the settlement with Color Q would be warranted in light of the exposure to damages from the suit. The record shows that the accounting firm, Arthur Andersen, performed an audit for Color Q which showed that Mr. Jeffcott had, inter alia, changed names on checks. Additionally, petitioner's counsel advised him to settle the claim, and that advice appears reasonable under the circumstances. In light of the S Corporation's potential liability for the damages from the suit, treble damages under the Ohio Corrupt Activities Act, the costs of the suit, and the attorney's fees, we conclude that petitioner's fears were reasonable. We think that a reasonable person would have thought that the settlement payment in the amount of $193,500 was less than the damages that could be assessed if Color Q's suit prevailed. Additionally, we conclude that there was justification for the belief that there existed sufficient exposure to liability that a compromise was necessary. Old Town

Corp. v. Commissioner, supra at 859. Based on the record in the instant case, we conclude that the Color Q payment meets all of the requirements of section 162(a).

Because we have decided that the Color Q payment is an ordinary and necessary business expense of the S Corporation that is deductible pursuant to section 162(a), we need not consider the parties' arguments regarding the deductibility of the payment as a loss pursuant to section 165.[5] We have considered the parties' remaining arguments concerning the deductibility issue and find them to be without merit. Consequently, we hold that the Color Q payment is an ordinary and necessary business expense to the S Corporation for its 1988 taxable year. Accordingly, we conclude that petitioners are entitled to a net operating loss carryforward of $58,020 for their 1990 taxable year attributable to the S Corporation's deduction of the Color Q payment for its 1988 taxable year.

---

[5]     Citing Johnson v. Commissioner, 66 T.C. 897 (1976), affd. 574 F.2d 189 (4th Cir. 1978), respondent contends, inter alia, that the S Corporation's "loss" was "compensated for by insurance" within the meaning of sec. 165. Johnson is distinguishable because we concluded in that case that the taxpayer's insurance policy on the life of his partner "was intended to compensate the * * * [taxpayer] for the loss of his investment [in the partnership], and that is precisely what it did." Johnson v. Commissioner, supra at 903. In the instant case, however, we are satisfied that the S Corporation's life insurance policies in the names of petitioner and Mr. Jeffcott were not purchased to compensate for potential embezzlement restitution payments. Consequently, we conclude that, were we to consider the loss issue, Johnson would not be dispositive of the instant case.

The next issue to be decided is whether the S Corporation is entitled to deduct, pursuant to section 162(a), attorneys' fees in the amount of $34,226 for its 1990 taxable year. The parties agree that section 265(a)(1) disallows a deduction for attorneys' fees paid by the S Corporation in recovering the insurance proceeds. Petitioners, however, contend that the attorneys' fees were incurred in the defense of both the embezzlement suit and the insurance suit. Petitioners contend that 65 percent of the total attorneys' fees were incurred to defend the embezzlement suit and are deductible pursuant to section 162(a). Respondent concedes that the S Corporation paid $34,226 in attorneys' fees during 1990 but contends that petitioners did not establish that any portion of such fees related to the embezzlement suit.

Taxpayers are required to maintain records that are sufficient to enable the Commissioner to determine their correct tax liability. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). Additionally, a taxpayer who claims a deduction must bear the burden of substantiating the amount and purpose of the item claimed. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975); sec. 1.6001-1(a), Income Tax Regs. Under certain circumstances, if a taxpayer establishes the entitlement to a deduction but does not establish the amount of the deduction, we may estimate the amount allowable, Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), if

the taxpayer provides some rational basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

In the instant case, respondent concedes that the S Corporation paid $34,226 in attorneys' fees during 1990. Consequently, we only consider whether petitioners have established that a portion of the attorneys' fees was incurred in defense of the embezzlement suit. At trial, Mr. Cramer and Mr. Tye, who provided the legal services and billed the attorneys' fees in issue, testified that, in their employment, they worked as a team but out of different offices. Mr. Cramer and Mr. Tye provided legal services beginning in December 1987, and Mr. Cramer continued to provide services until the trial of the instant case.

Respondent argues that the embezzlement suit was concluded more than 17 months prior to the S Corporation's 1990 taxable year and that the record does not establish that the attorneys rendered any services in defense of the embezzlement suit during 1990, the year during which the attorneys' fees were paid. Respondent argues that the record, however, does establish that the attorneys performed substantial services in defense of the insurance suit during 1990.

Petitioner, however, testified that "the vast majority" of Mr. Cramer's and Mr. Tye's time during the period from 1987 to 1990 was related to the embezzlement suit. Petitioner also testified that substantial legal fees were paid prior to 1990 but

that, by agreement, the payment of $34,226 during 1990 was in part a deferral of fees from years prior to 1990.

Mr. Cramer testified that, during the period from 1987 to 1990, he and Mr. Tye spent "more time and energy and adrenalin and research" on the embezzlement suit than on the insurance suit. Mr. Cramer testified that his and Mr. Tye's work on the embezzlement suit versus the insurance suit during the period from 1987 to 1990 "could have been 80/20 in favor of the embezzlement case but at least 50/50."

We are satisfied by the record in the instant case that some of the $34,226 in attorneys' fees paid during 1990 were incurred in defense of the embezzlement suit. Petitioners, however, have not established the precise amount of the deduction; i.e., the actual amount of attorneys' fees that were incurred in defense of the embezzlement suit. Nonetheless, because petitioners have established that they are entitled to a deduction in some amount, we shall make a reasonable approximation of the amount allowable, "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner, supra at 543-544.

Mr. Cramer estimated that between 50 and 80 percent of his and Mr. Tye's time was spent on the embezzlement suit during the period from 1987 to 1990. As we stated above, petitioners proposed that 65 percent of the total attorneys' fees be considered attributable to the embezzlement suit. We are persuaded by petitioner's testimony that the attorneys' fees paid

during 1990 were a deferral from prior years. Petitioner, however, testified that the fees in issue were only in part a deferral from years prior to 1990. Consequently, bearing heavily against petitioners as authorized by Cohan, we will approximate that 40 percent of the attorneys' fees paid during 1990 were incurred for services rendered in defense of the embezzlement suit. Accordingly, we hold that the S Corporation is entitled to deduct $13,690.40 in attorneys' fees for its 1990 taxable year, and we sustain respondent's increase in petitioners' distributive share of income from the S Corporation to the extent of $20,535.60.

The final issue to be decided is whether petitioners are liable for an addition to tax and penalty pursuant to sections 6651 and 6662 for taxable year 1990. Section 6651(a)(1) imposes an addition to tax for failure to file timely a tax return unless it is shown that such failure is due to reasonable cause and not willful neglect. A taxpayer can establish reasonable cause by showing that, despite the exercise of ordinary care and prudence, the taxpayer was unable to file the required tax return within the prescribed time. United States v. Boyle, 469 U.S. 241, 246 (1985); Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. and Admin. Regs. Willful neglect has been defined as a conscious, intentional failure or reckless indifference to timely filing a return. United States v. Boyle,

supra at 250.  Petitioners have the burden of proof.  Rule 142(a).

It is undisputed that petitioners did not timely file their individual tax return for taxable year 1990.  Petitioners argue that they missed the deadline "Due to exigent business circumstances".  Petitioners also argue that they, "in good faith, had no expectation that any tax was due."

We conclude that petitioners have not met their burden of proof.  Petitioners did not explain the "exigent business circumstances" that prevented a timely filing.  Moreover, an unverified belief that no taxes are owing does not constitute reasonable cause of the sort that will allow petitioners to escape the addition to tax pursuant to section 6651(a)(1).  Olsen v. Commissioner, T.C. Memo. 1993-432, and cases cited therein. The question is not whether petitioners thought that they owed tax but whether they knew or should have known that they needed to file a return.  Jackson v. Commissioner, 864 F.2d 1521, 1527 (10th Cir. 1989), affg. 86 T.C. 492 (1986); Olsen v. Commissioner, supra.  Consequently, we hold that petitioners have not established reasonable cause for their failure to file timely their 1990 tax return.  Accordingly, petitioners are liable for the section 6651(a)(1) addition to tax relating to their tax liability for taxable year 1990.

Section 6662(a) imposes a 20 percent penalty on the portion of an underpayment of tax that is attributable to, inter alia,

(1) negligence or disregard of rules or regulations or (2) any substantial understatement of income tax. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, including failure to exercise due care, failure to do what a reasonable person would do under the circumstances, or failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard of the Code or the temporary and final regulations issued pursuant to the Code. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. A substantial understatement of tax is defined as the amount which exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year, or $5,000. Sec. 6662(d)(1)(A).

The accuracy-related penalty does not apply to any portion of an underpayment with respect to which it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's efforts to assess the proper tax liability. Id. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of

the experience, knowledge, and education of the taxpayer.  Id.
Petitioners must establish error in respondent's determination
that they are liable for the penalty provided by section 6662(a).
Rule 142(a); Estate of Monroe v. Commissioner, 104 T.C. 352, 366
(1995).

Petitioners contend that the portion of the underpayment
resulting from the deduction of legal fees is not attributable to
negligence or disregard of rules or regulations.  Petitioners
argue that they "made a reasonable attempt to comply with the tax
law and did not disregard rules or regulations", as evidenced by
petitioner's belief "that the vast majority of the legal fees
were incurred in connection with the embezzlement suit and were
attributable to years prior to 1990", which "was supported by the
testimony of Mr. Cramer".  Additionally, petitioners argue that
the amount of the understatement subject to the penalty should be
reduced because petitioner, a certified public accountant,
"researched the issues" and believed that the deductions were
supported by "substantial authority".

Respondent, on the other hand, argues that petitioners were
negligent in claiming a deduction for attorneys' fees incurred to
recover tax exempt income.  Respondent contends that there is "no
evidence that the attorneys' fees were paid for services rendered
for any purpose other than in pursuit of the life insurance
proceeds."  Additionally, respondent argues that the section 6662

penalty applies because of petitioners' substantial understatement of tax.

As to the portion of the underpayment resulting from our holding that the S Corporation is not entitled to the entire amount deducted for attorneys' fees, although we calculate that no substantial understatement of tax exists, we conclude that petitioners have not established that they kept adequate books and records. Sec. 6662; sec. 1.6662-3(b)(1), Income Tax Regs. As evidence of the propriety of the deduction of attorneys' fees, petitioners rely only on petitioner's own belief, "supported" by the testimony of one of the attorneys who rendered services, that the "vast majority" of the attorneys' fees were incurred in connection with the embezzlement suit. Petitioners, however, produced no bills or checks documenting the nature of the $34,226 claimed as a deduction for attorneys' fees. Moreover, Mr. Cramer's testimony was far from conclusive as to the amount of fees attributable to the embezzlement suit. Consequently, we conclude that petitioners have not satisfied the requirements of section 1.6662-3(b)(1), Income Tax Regs.

Nevertheless, no penalty may be imposed pursuant to section 6662 if petitioners establish that there was a reasonable cause for the portion of the underpayment and that they acted in good faith with respect to such portion. Sec. 6664(c)(1). In light of the experience, knowledge, and education of petitioner, a certified public accountant, we believe that he should have kept

accurate records to show the purpose of the payment for attorneys' fees in order to allocate properly the fees between the insurance suit and the embezzlement suit. Because petitioner failed to do so, we are not persuaded that he made a reasonable attempt to comply with the regulations, and petitioners have not shown reasonable cause for such failure. Secs. 1.6664-4(b)(1), 1.6662-(3)(b)(1), Income Tax Regs. Accordingly, we conclude that the portion of petitioners' underpayment relating to the disallowed amount of the deduction of attorneys' fees is attributable to negligence.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>